## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| ALVIN HOLDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOSTON POLICE DEPARTMENT, | ) | C.A. No. 20-10656 |
| CITY OF BOSTON, | ) | |
| WILLIAM GROSS, in his Official Capacity | ) | |
| as the COMMISSIONER OF THE BOSTON | ) | |
| POLICE DEPARTMENT, | ) | |
| WILLIAM EVANS and EDWARD DAVIS, | ) | |
| each in his Official Capacity as former | ) | |
| COMMISSIONER OF THE BOSTON | ) | |
| POLICE DEPARTMENT, | ) | |
| NICOLE TAUB, individually and in her | ) | |
| Official Capacity as Former Senior Staff Attorney | ) | |
| for the BOSTON POLICE DEPARTMENT, | ) | |
| KENNETH FONG, individually and | ) | |
| in his Official Capacity as | ) | |
| BOSTON POLICE DEPARTMENT CAPTAIN, | ) | |
| and SHAWN WILLIAMS, in his Official Capacity | ) | |
| as DIRECTOR OF PUBLIC RECORDS AND | ) | |
| RECORDS ACCESS OFFICER for the | ) | |
| CITY OF BOSTON AND THE BOSTON | ) | |
| POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS

The Plaintiff, Alvin Holder, respectfully submits this memorandum of law in opposition

to the motions to dismiss filed by the City of Boston (Doc. 6) and Kenneth Fong and Nicole

Taub (Doc. 9). Plaintiff's Section 1983 claim (Count I) should not be dismissed as Defendants'

unconstitutional policies and customs have led to the violation of Plaintiff's First Amendment

right to free speech on matters of public concern and his Fourteenth Amendment Right to due process and equal protection. Taub and Fong are not protected by the litigation privilege or the doctrine of prosecutorial immunity. Plaintiff's Section 1981 claim (Count II) should not be dismissed because he has met the standard for race discrimination and has identified several protected rights that have been violated. His civil rights conspiracy claim under Section 1985 (Count III) survives because the conspirators knew they were violating the law and are not entitled to qualified immunity. Plaintiff's Whistleblower claim (Count V) should not be dismissed because Plaintiff suffered retaliation after complaining about matters of public safety and legal violations. His claim for violation of the Personnel Record Law (Count VI) should not be dismissed because Defendants have failed to produce the IAD report which is part of his personnel record. Plaintiff has the right to declaratory relief (Count VIII) and injunctive relief (Count X) as he is entitled to these remedies under the facts of this case. Plaintiff's claim for Expungement (Count IX) should not be dismissed because he still has the right to this relief under the Personnel Record Law despite the arbitration decision. Plaintiff's M.G.L. c. 150C claim (Count XIII) should not be dismissed because there are grounds to vacate the arbitration award (fraud, due process, lack of authority and public policy). Plaintiff's claims against Taub and Fong for fraud (Count XII), tortious interference (Count XIV), and defamation (Count XV) should not be dismissed based on their conduct and because they are not protected by the litigation privilege or prosecutorial immunity. With regard to all claims, Plaintiff's claims are timely because of Defendants' recent conduct in 2018 and 2019 and based on doctrines of fraudulent concealment/equitable tolling and continuing violation.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Alvin Holder ("Det. Holder"), a detective with the Boston Police Department

("BPD"), initiated this action against the City of Boston and other defendants violated state and federal law by, *inter alia*, depriving him of his constitutional right to due process and property and wrongfully retaliating against him by pursuing a complaint for bogus violations of the BPD Rules and Procedures, making false statements about the investigation, and intentionally withholding key exculpatory evidence.

The incident which set this dispute in motion (the "Incident") occurred on October 19, 2005. On that date, Det. Holder was socializing with two fellow BPD officers, Frank Lee and Eric Mencey, and a Boston firefighter, Rayshawn Johnson, all of whom were off-duty. At the time of the incident, Det. Holder was driving his personal vehicle in the Hyde Park Neighborhood of Boston, and the three other individuals were passengers. While handling a personal firearm owned by Det. Holder, Lee accidentally discharged the weapon, injuring Mencey. Det. Holder immediately drove to nearby Faulkner Hospital to obtain medical treatment for Mencey. *Complaint ("C")*, at ¶¶19-20.

While at the hospital, Det. Holder notified BPD Lieutenant Patrick Cullity via phone about the occurrence and location of the Incident. In response, BPD personnel responded to both the scene of the Incident and the hospital. *C,* ¶¶21-24. BPD Superintendent Bobbie Johnson interviewed Det. Holder at the hospital. During the interview, Det. Holder informed Spt. Johnson that: 1.) he had been driving at the time of the incident; 2.) he had not discharged the weapon; 3.) Mencey had been shot; and 4.) Lee had been in possession of the firearm when the incident occurred. All of this information was true. Det. Holder, however, declined to provide any additional information at the time until he could speak with an attorney for the Boston Patrolmen's Association (the "Union"). As part of its investigation, the BPD also inspected Det. Holder's vehicle and took custody of the firearm which had discharged.

On December 23, 2005, the BPD Internal Affairs Division (the "IAD") issued a complaint against Det. Holder, alleging that he: 1.) was negligent in handling the scene of a firearm discharge; and 2.) was "untruthful regarding information supplied to Superintendent Johnson and Sergeant Colon." *C,* ¶50. While the complaint did not specify when Det. Holder allegedly supplied untruthful information, Spt. Johnson and Sgt. Colon had only interviewed him at the hospital on the night of the Incident (as set forth above). The complaint also did not specify what information was allegedly untrue. As part of the IAD's investigation into the allegations, Sgt. William Chinetti interviewed Det. Holder on January 18, 2006. *C,* ¶51. Around this time period, Det. Holder, through his Union attorney, submitted written complaints to the BPD regarding the fact that his personal firearm continued to be withheld without justification. *C,* ¶¶61-63.

Several months later, in a notice dated May 19, 2006, Det. Holder was advised that the IAD had sustained the allegations in the complaint. *C,* ¶54. The BPD never provided any additional information regarding what information Det. Holder provided which was allegedly untruthful, despite his multiple requests for such information. *C,* ¶55. In early January 2007, Det. Holder was presented with a settlement agreement from the BPD, which offered a reduced suspension, in exchange for Det. Holder's acceptance of the allegation that he had been untruthful. Det. Holder refused to sign the settlement agreement. *C,* ¶¶57-60.

On February 20, 2008—before any further action was taken regarding the allegations and more than two years after Det. Holder was interviewed in connection with the IAD investigation—BPD Captain Kenneth Fong issued a new internal complaint against Det. Holder. *C,* ¶65. Rather than alleging that Det. Holder had been untruthful on the night of the Incident, the new complaint alleged that Det. Holder had been untruthful during his January 18, 2006

interview with Sgt. Chinetti, in violation of BPD Rule 102, §23 (truthfulness). *C,* ¶¶66-67.

A departmental disciplinary hearing was held in front of Deputy Spt. Kelley McCormick on March 9, 2009 for the purpose of addressing Fong's complaint. Defendant Nicole Taub represented the BPD at the hearing. On June 25, 2009, the BPD sent to Det. Holder a Notice of Suspension, stating that he was being suspended for 45 days without pay based on Fong's allegation that he had been untruthful during the January 2006 interview with Sgt. Chinetti. The notice did not indicate how the information which Det. Holder provided to Sgt. Chinetti was false. *C,* ¶77. Det. Holder served his suspension without pay, causing him to lose 45 days of pay, totaling approximately $25,000. *C,* ¶¶76-81. The BPD did not return Det. Holder's personal firearm to him until November 2009, after he served his suspension. *C,* ¶63.

Despite having served his suspension, Det. Holder appealed the BPD's decision that he had been untruthful, due in large part to the fact that the determination would remain part of his personnel record, thereby impairing his credibility as a witness for the prosecution. Accordingly, in late 2012, an arbitration hearing was held before Michael C. Ryan, Esq. Defendant Taub again represented the BPD at the proceeding. Following the hearings, Arbitrator Ryan upheld the BPD's determination that Det. Holder had violated BPD Rule 102, §23 (truthfulness) by providing inaccurate information about what exactly he had told Spt. Johnson and Lt. Cullity on the night of the Incident. *C,* ¶¶90-91.

In late 2017, while testifying for the prosecution in a criminal trial, the prosecutor provided Det. Holder with a heavily redacted copy of a report by Sgt. Chinetti, dated February 6, 2006 (the "IAD Report"), concerning his investigation of the Incident, as well as his conclusions and recommendations. The BPD had provided the IAD Report to the prosecutor in response to a request for Det. Holder's personnel file, pursuant to *Brady v. Maryland* and *Giglio v. U.S.* The

BPD, however, had never provided a copy of the IAD Report to Det. Holder or his counsel in connection with the Trial Board or the Arbitration proceedings. Upon reading the IAD Report for the first time, Det. Holder discovered that the Sgt. Chinetti's investigation summary directly refutes the information and contentions which Defendant Taub had made on the BPD's behalf at the trial board arbitration hearings. *C,* ¶¶122-133.

Det. Holder sent complaint letters to the BPD in March and December 2018 , requesting a copy of the unredacted IAD Report that had been withheld from him, and expressing reasons why this matter must be investigated, as it is not just a private matter affecting him personally, but has wider significance for citizens and crime victims who rely on the police department for their integrity and protection. The BPD retaliated by purposely withholding the report and violating its obligation to provide it in response to plaintiff's personnel record request and public record request. Despite the issuance of a January 9, 2019 order from the Supervisor of Records for Commonwealth of Massachusetts, requiring the BPD to produce IAD Report within 10 days, the BPD has refused to comply, and still has not produced an unredacted copy of the Report. The BPD also retaliated against Det. Holder by assigning him to the same supervisor who refused to process his initial complaint after the arbitration, which has created a hostile work environment for plaintiff and is impairing the department's detective work because his own supervisor refuses to talk to him.

By way of his complaint in this action, Det. Holder has asserted the following counts against the various defendants: 1.) violation of 42 U.S.C. §1983 (vs. all defendants); 2.) violation of 42 U.S.C. §1983, as a remedy for violation of 42 U.S.C. § 1981 (vs. all defendants); 3.) Conspiracy to Violate Civil Rights in violation of 42 U.S.C. §1985 (vs. all defendants); 4.) Unfair Labor Practices in violation of M.G.L. ch. 150E, §10 (vs. BPD and City of Boston); 5.)

Violation of the Massachusetts Whistleblower Law, M.G.L. ch. 149, §185 (vs. BPD and City of Boston); 6.) Violation of the Massachusetts Personnel Record Law, M.G.L. ch. 149, §52C (BPD and City of Boston); 7.) Violation of the Massachusetts Public Records Law, M.G.L. ch. 66, §10 (vs. BPD, City of Boston, Shawn Williams, and William Gross); 8.) Declaratory Judgment (vs. BPD and City of Boston) (for release of the IAD Report); 9.) Request for Expungement under M.G.L. ch. 149, §52C (vs. BPD and City of Boston); 10.) Injunctive Relief (vs. BPD and City of Boston) (to remove the untruthfulness determination and produce an unredacted copy of the IAD Report; 11.) Civil Conversion (vs. BPD and City of Boston); 12.) Fraud (vs. all defendants); 13.) Request to Vacate Arbitration Award under M.G.L. ch. 150C (vs. BPD and City of Boston); 14.) Tortious Interference with Advantageous Business Relationship (vs. Taub and Fong); and 15.) Defamation (Taub and Fong)

## II.    ARGUMENT

### A.  **Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Druker v. Sullivan*, 334 F. Supp. 861, 864 (D. Mass. 1971).  In considering such a motion, the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. *U.S. ex rel. Hutcheson v. Blackstone Med. Inc.*, 647 F.3d 377, 383 (1st Cir. 2011).  All well-pleaded factual allegations are entitled to the presumption of truth and the plaintiffs are given the benefit of all reasonable inference to be drawn from those facts. *Cooperman v. Individual Inc.,* 171 F.3d 43, 46 (1st Cir. 1999). Moreover, in reviewing the sufficiency of the factual allegations on a motion to dismiss, the

Court must evaluate the complaint holistically, rather than on a fact-by-fact basis. *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011).

"It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). "The question confronting a court on a motion to dismiss is whether all the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." *Ocasio-Hernandez*, 640 F.3d at 14. "In order to give rise to a 'plausible' claim, a complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Germanowski v. Harris*, 854 F.3d 68, 72 (1st Cir. 2017).

### B. <u>Plaintiff's §1983 Claim Must Not Be Dismissed, as He Has Identified One or More Constitutional Rights Which Have Been Violated. (Count I)</u>

#### i. <u>First Amendment Right – Protected speech on a matter of public concern</u>

Plaintiff has successfully pled a violation of his First Amendment right to free speech; his protected speech is a matter of public concern. "Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of a protected right[.]" *Mercado-Berrios v. Cancel-Alegria*, 611 F.3d 18, 25 (1st Cir. 2010) (quoting Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)). Accordingly, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." Id. (quoting Hartman, 547 U.S. at 256, 126 S. Ct. 1695). Plaintiff's 1983 claim must not be dismissed and must be decided by a jury because the allegations in his Complaint show he has suffered retaliation including negative personnel action after speaking out on matters of public concern. *Broderick v. Evans*, 2005 U.S. Dist. LEXIS

57895.  In Plaintiff's 2013 and 2014 letters to the BPD (Exh A and B to the City's Motion to Dismiss), Plaintiff raises matters of public concern. In challenging the untruthfulness determination that is in his record, he references Chinetti's violation of IAD investigation rules, various examples of Taub's dishonesty and her violations of the BPD's Public Integrity and Truthfulness policies, and he requests that the BPD investigate these matters, which is mandatory under the BPD's Rules and Procedures for all complaints that are received regarding misconduct by BPD personnel.  In Exhibit A, Plaintiff references the global impact of this conduct on the people of the City of Boston who are served by the BPD and the harm it causes when BPD personnel are permitted to lie and violate BPD rules, and the rules are not applied to all police department personnel equally.  Plaintiff says to Commissioner Davis on page 3 of his October 7, 2013 letter, "I ask where one turns if they cannot trust the very people that are sworn to protect them.  I encourage you to assist me in righting the wrong that has been done."  Plaintiff then acknowledges that he may never see his name cleared, but he says "at least I can say I tried and the truth was exposed."  He states that he has sent a copy of his letter to family, friends and colleagues.  This shows Plaintiff was not just complaining about action affecting him personally. In fact, he and his former attorney told the BPD during a meeting that there were other officers who had been victimized by Taub's lies in the same manner.  (C ¶102)  This was not just a personal matter for Plaintiff.

Plaintiff's May 19, 2014 letter (contained in Defendants' Exhibit B to their Motion) was written to Internal Affairs Investigator Sergeant Detective John Puglia.  (C ¶ 104, 105.)  Plaintiff alleges that he suffered retaliation after submitting these letters including removing him from active duty status, deeming him to be an unsuitable person to carry a firearm and suspending his license to carry, unlawfully seizing his personal firearm from his residence (C ¶ 100-101). (This

was a separate incident from the seizure of his firearm from 2005 to 2009.)  Additionally, after the May 19, 2014 letter the BPD retaliated by ordering him to cease contact with Internal Affairs, pressuring him to abandon his complaint rather than have it investigated, subjecting him to hostile treatment at a meeting on February 15, 2016, denying him a promotion to Detective, requiring him to undergo a psychological evaluation without justification, and completely refusing to investigate his complaint against Taub as is required by its own rules and procedures. (C ¶ 106-121)

Contrary to the City's assertions, the individuals committing these violations are in fact named in the Complaint.  Commissioner Ed David and Chief Daniel Linskey issued the order re seizure of his firearm (C ¶ 100-101).  The unjustified psychological evaluation was order by Commissioner Evans through his then Commander Captain Haseeb Hosein. (C ¶ 115 ) The individuals refusing to process or investigate Plaintiff's Complaint against Taub included Internal Affairs Division Investigator Sergeant Detective John Puglia (appointed by Commissioner William Evans)( C ¶ 104), Internal Affairs Supervisor Lieutenant Detective Christopher Hamilton (who actually ordered Plaintiff NOT to contact Internal Affairs)( C ¶ 108); Lieutenant Detective Brian McEachern and Sergeant Detective Courtney Matthews from the BPD Anti-Corruption Division .( C ¶ 109); Internal Affairs Investigators Lieutenant Detective Fred Williams and Lieutenant Detective Adrian Troy (C ¶ 113); and Amy Ambrick, Esq. in the Office of the Legal Advisor (C ¶ 120)

Plaintiff's complaint contains other allegations revealing that he engaged in protected speech that is a matter of public concern during 2018 and 2019 and as a result, has suffered more retaliation.  The Complaint references subsequent letters from Plaintiff to the BPD prompted by the surfacing of the IAD report in late 2017.  The March 22, 2018 and December 18, 2018 letters

from Plaintiff's counsel to the BPD reference matters of public concern that have been triggered by the BPD's actions, including the renewed need to investigate and rectify the situation given the newly discovered evidence that had been concealed for so long. Plaintiff also noted the negative impact that Defendants' actions are having on the criminal justice system, particularly crime victims. These victims are less likely to see the perpetrator convicted if Plaintiff is the one testifying for the prosecution, given that he has the untruthfulness determination in his file that must be disclosed to the criminal defendant's attorney under Brady/Giglio. (C ¶ 134-154, 186-191, 267, 268, 270)

The December 18, 2018 letter expressed urgency in having this issue addressed by the BPD, given that Plaintiff had been called upon to testify for the prosecution in an upcoming trial. It stressed the importance of removing the baseless untruthfulness determination so that it is not provided to the criminal defendant's attorney thus impairing the prosecutor's ability to secure a conviction. The letter urged the BPD to take immediate action given that it was now clear that the untruthfulness determination lacked merit and resulted from fraudulent misrepresentations and withholding and falsifying evidence. See Exhibit A and B attached hereto.

It is concerning that all of a sudden after the December 18, 2018, letter was received, Plaintiff was no longer being asked to testify in the proceeding, as a plea bargain had been reached, removing the "urgency" and the BPD avoided taking action on the issue. (C ¶ 188-189) But the matter of public concern remains, because Plaintiff will continues to be a "Giglio impaired witness" so long as the untruthfulness determination remains in his file. (C ¶ 190) By failing to remove it, the BPD is condoning dishonest and corrupt conduct and knowingly impairing Plaintiff's ability to serve as a credible witness for the prosecution and knowingly impeding the prosecution of criminals. (C ¶ 191)

Like it had before in 2013 and 2014, BPD again refused to respond to the concern or investigate.  It also retaliated by purposely excluding the report when it provided Plaintiff with his personnel record and the IAD file in response to his formal requests. The BPD also retaliated by assigning Plaintiff to work under Lt. Det. Fred Williams over his objection.  Lt. Williams is the same supervisor who had received his complaint about Taub in May 2014 and refused to process it, showing a complete disregard for his concerns and hanging up the phone when he called. This current arrangement has created a hostile work environment for Plaintiff and impairing the department's detective work. (C ¶ 193-197)

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147-148 (1983). "[T]he greater the value of the subject of the speech to the public, the more the balance tilts towards permitting the [government] employee to express himself." *Guilloty Perez v. Pierliusi*, 339 F.3d 43, 53 (1st Cir. 2003).  An employee's First Amendment interests are entitled to the greatest weight "where he is acting as a whistleblower in exposing government corruption." *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988).  When a government employee's speech touches upon a matter of general public concern, there is no reason to inquire into his motive for speaking. *O'Connor v. Steeves*, 994 F.2d 905, 913-914 (1st Cir. 1993).  If the adverse employment decision is motivated by retaliation, no governmental interest can justify the action. *Mihos v. Swift*, 358 F.3d 91, 107-108 (1st Cir. 2004).

Plaintiff's complaints to the Commissioner, Internal Affairs, Anti-Corruption and other BPD personnel involve multiple violations of BPD rules: withholding of IAD report (C ¶ 56), withholding of firearm without justification (C ¶ 64), Fong bringing accusations that did not originate from a complaint (C ¶ 76-80); failure to assign complaint control number and

investigate complaints against police personnel (C ¶ 117-121.)  These rules are in place to assure due process for BPD employees and to protect the public. They are needed to maintain integrity amongst BPD personnel for the benefit of the citizens it is hired to serve and protect. Plaintiff's complaints involved protected First Amendment expression.  The 2018 letters after the IAD report surfaced also include protected First Amendment expression because they complain about a newly discovered instance of concealing and falsifying evidence by Taub, and why this must be investigated and corrected not only for Plaintiff's benefit, but for the benefit of criminal justice system and crime victims.

There is a legitimate public interest in police personnel matters and discipline.  *See Guilloty Perez*, 339 F.3d at 52 ("The diligence and lawfulness of a police department's activities are matters of great interest to the public."). This is evidenced by the fact that the disciplinary action taken against Plaintiff was reported on by the media. *See Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990). The filing of this lawsuit was also reported by the media.

The issues Plaintiff complained about were not private matters involving purely personal concerns over working conditions, as occurred in *Tang v. Rhode Island*, 163 F.3d 7, 12 (1st Cir. 1998)(complaints regarding administrative leave, office relocation, telephone restrictions, and computer access were individual personal complaints that raised no issue of public concern.)  In *Broderick*, the plaintiff was subjected to harsher discipline that was warranted, was required to undergo a psychiatric examination for no legitimate reason, and was terminated for filing a lawsuit.  Even though these issues pertain to treatment of the plaintiff himself, these were deemed to be issues of public concern such that Defendant's motion for summary judgment was denied. *Broderick*, 2005 U.S. Dist. LEXIS 57895, *15-18

A matter of public concern does not "*lose* its importance merely because it arises in an employee dispute" (emphasis original). *Hall v. Ford*, 272 U.S. App. D.C. 301, 856 F.2d 255, 260 (D.C. Cir. 1988). See *Rode v. Dellarciprete*, 845 F.2d 1195, 1202 (3d Cir. 1988) ("Dismissing [the plaintiff's] speech as unprotected merely because she had a personal stake in the controversy fetters public debate on an important issue because it muzzles an affected public employee from speaking out"). It is important to good government that public employees be free to expose misdeeds and illegality in their departments." *Id*. at 826. "*Whistleblowing does not need to be limited to systemic charges of corruption to* qualify as a matter of public concern. A specific violation of a *law that creates a risk to public health, safety or good governance likewise is a matter of public concern*" (emphasis supplied). *Id*. at 827. *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 587-588 (2001) *citing Myers v. Hasara*, 226 F.3d 821, 827 (7th Cir. 2000).

Speech about official malfeasance or abuse of office by police personnel in failing to enforce department rules and thereby exhibiting an unexcused disinterestedness in a matter of intense public interest, is speech which is of inherent public interest and obviates any need to consider plaintiff's motives or his personal concerns. *Howcroft, citing O'Connor v. Steeves*, 994 F.2d at 913-915 and *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import").

Defendants' actions and the concerns raised by Plaintiff impact not only Plaintiff himself, but his co-workers, and residents of the City of Boston who are served by the BPD and whose tax money pays their salaries, and crime victims who are victims of Taub's lies because they are less likely to see their perpetrators convicted with Plaintiff testifying as a Giglio-impaired witness. Because Plaintiff has sought to bring to light actual or potential wrongdoing of this

nature, his speech involves a "legitimate matter of *inherent* concern to the electorate," and there is no need to conduct a further inquiry into his motives. <u>*Baron v. Suffolk County Sheriff's Dep't,* 402 F.3d 225, 235 (1st Cir. 2005) *citing* O'Connor</u>, 994 F.2d at 913-14.

Plaintiff's complaints about the BPD's inconsistent application of police rules and procedures (including its failure to follow the rule that ALL complaints about BPD personnel misconduct are processed (assigned a Complaint Control number) and investigated) is matter of public concern. The BPD has still failed to process or investigate Plaintiff's complaint against Taub. Plaintiff's protected expression was a substantial or motivating factor in the adverse employment action. *Mt. Healthy City Bd. of Education v. Doyle*, 429 U.S. 274, 287 (1977); *Mullin v. Town of Fairhaven*, 284 F.3d 31, 38 (1st Cir. 2002). This raises issues of fact the resolution of which belongs to the jury. *Nethersole v. Bulger*, 287 F.3d 15, 18-19 (1st Cir. 2002). The chronology of events in this case creates a presumption that Defendants' actions against Plaintiff were retaliatory. Temporal proximity between protected speech and adverse employment actions can be circumstantial evidence of causation. *Nethersole v. Bulger*, 287 F.3d 15, 20 (1st Cir. 2002). Viewing the evidence in the light most favorable to Plaintiff, under the circumstances, the evidence (particularly the temporal proximity of the relevant events) is sufficient to satisfy the standard.

Retaliatory conduct has serious public policy implications, and the adverse action taken by the employer is not only unfair to the employee, but also "offends the public's interest." *See DeRose v. Putnam Mgmt. Company,* 398 Mass. 205 (1986); *Flesner v. Technical Communications Corporation*, 410 Mass. 805 (1991). Here, we have Department representatives pursuing a baseless complaint, knowingly and intentionally misrepresenting key facts, and withholding evidence about a fellow public service employee, destroying his

reputation and interfering with his ability to be an effective police officer and protect the public. (C ¶ 169, 171-185). This conduct clearly offends the public's interest in maintaining an honest and ethical Police Department. The BPD also acted in a retaliatory manner when it brought the Complaint against Officer Holder in February 2008. The Complaint stated that it was based on the IAD interview two years earlier, but the timing shows it was really brought as a retaliatory measure in response to written demands from Officer Holder and his attorney for the return of his personal firearm, which had been unlawfully withheld by the Department since the October 2005 incident. (C ¶ 61-64). Letters from Officer Holder's prior attorney Ken Anderson show there was no legitimate reason for withholding the firearm for such a long period of time, and in 2007, legal action was threatened unless it was returned. Fong's complaint against Plaintiff in early 2008 was prompted by a motive to retaliate against him for complaining about the Department's violation of his rights in this respect. (C ¶ 69)

Commissioner Evans also retaliated against Plaintiff by advising him (through his then Commander Captain Haseeb Hosein) that he needed to undergo a psychological evaluation in order to be considered for the role of Detective. (C ¶ 115) Massachusetts courts have addressed this issue of an unjustified psychological evaluation as one form of unlawful retaliation against a police officer, giving rise to liability under 42 U.S.C. sec. 1983. *See McGunigle v. City of Quincy*, 835 F.3d 192 (1st Cir. 2016). There was no justification for said evaluation as the Plaintiff was already deemed fit for active duty and other similarly situated candidates were not advised to undergo such an unjustified testing for consideration to be promoted to Detective. (C ¶ 115). The BPD intentionally requested the psychological evaluation in order to create a question about Plaintiff's mental fitness without justification as a way of making it more difficult

for him to achieve the promotion he desired and deterring him from further pursuing his complaints regarding Attorney Taub's actions. (C ¶ 116)

### ii. <u>Due Process Rights</u>

Plaintiff has also alleged violations of the Due Process Clause of the Fourteenth Amendment in that the Defendants have deprived him of property without a fair procedure. The BPD procedures to which Plaintiff has been subjected are unfair in many ways, beginning in 2008 and continuing to date. Fong brought accusations against Plaintiff in 2008 that do not arise from any existing complaint which violates BPD rules and procedures. (C ¶ 380-381); During the arbitration Taub lied to the arbitrator and concealed evidence that is exculpatory and directly relevant to the accusations against Plaintiff, which violated the BPD's Public Integrity Policy and the law (Brady v. Maryland). (C ¶ 390, 361)  To date, the BPD has refused to process or investigate Plaintiff's Complaint against Taub as required by its own rules and procedures. (C ¶117-121)  Plaintiff has made many attempts to get his concerns addressed but has been shut down and ordered not to contact Internal Affairs. (C ¶ 108)  the BPD's Anti-corruption department would not investigate a complaint of corruption.  (C ¶ 109-110)  To date, the BPD has concealed the IAD report from Plaintiff even though disclosure is required under the Personnel Record Law and Public Record Law and the January 2019 Order from the Supervisor of Records for the Commonwealth. (C ¶ 165-167)   Plaintiff still has not been given the report; he only has the heavily redacted version given to him inadvertently by a third party. (C ¶ 268) Taub's employment with BPD ended in the months following the March 2018 letter.  (C ¶ 157) but no action has been taken to fix the harm to Plaintiff despite requests in 2018 and 2019.

As further due process violations, Defendants have deprived Plaintiff of various property interests (i.e., income, job status, promotions, professional reputation, etc.)  (C ¶ 171-185)

Because Plaintiff can only be discharged for cause, he has a property interest in his employment that is entitled to constitutional protection. *Ohland v. Montpelier*, 467 F. Supp. 324, 339 (D. Vt. 1979). Because of Defendants' unlawful actions, Plaintiff is now a Giglio-impaired witness, which impacts a critical element of his job. The reputational harm he has alleged is a violation of his due process rights. *See Lynch v City of Boston, citing Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1985). Plaintiff has suffered governmental action altering a right or status that he previously held under the law. *Paul v Davis*, 424 U.S. 693, 708-709 (1976); *Rodriguez de Quinonez v. Perez*, 596 F.2d 486, 489-90 (1st Cir. 1979). He has been stigmatized as a police officer who lacks credibility, and unfairly labeled a Giglio-impaired witness. Now every time he testifies as a witness for the prosecution in a federal criminal proceeding, the prosecutor must provide the criminal defendant's attorney with any information in Plaintiff's file that is material to his credibility, which includes the untruthfulness determination and Chinett's IAD report. *Giglio v. U.S.*, 405 U.S.150, 154 (1972).

Plaintiff has also been deprived of his property rights by virtue of Defendants' failure to give him a complete copy of his personnel file as required under the Personnel Record Law, M.G.L. c. 149, section 52C as explained herein (Count VI). Plaintiff was also deprived of property when his personal firearm was unlawfully seized from his residence and he was deemed unfit to carry without justification. That action also constituted an illegal search and seizure in violation of the Fourteenth Amendment of the U.S. Constitution and Part I, Art VI of the Massachusetts Constitution.

It is clear from the Complaint that Plaintiff has successfully alleged a violation of his right to procedural due process under the Fourteenth Amendment, since he has been deprived of these multiple property rights as a result of unfair procedures. Plaintiff has also alleged a

violation of his Fourteenth Amendment equal protection rights, claiming that because of considerations of race, Defendants treated Taub (who is white) more favorably than Plaintiff (who is a person of color) with respect to the BPD's application of its rules and procedures for IAD processing and investigation of complaints against BPD personnel. (C ¶ 207-220; See analysis of Section 1981 claim herein). Since Plaintiff has alleged these violations of his rights under the First and Fourteenth Amendments, the Section 1983 claim must not be dismissed.

### iii. **Plaintiff has pled one or more policies or customs of Defendants that caused the constitutional violations, so his Section 1983 claim (Count I) must not be dismissed.**

"In general, actions in civil rights cases should not be dismissed at the pleading stage unless it is certain that the plaintiff can prove no set of facts that would entitle him to relief." *Williams v. Codd*, 459 F. Supp. 804, 817, (S.D.N.Y. 1978) (denying motion to dismiss police officer's §1983 against city, where his complaint alleged "that the involvement of the highest ranking officials in the Police Department in the alleged conspiracy qualifies as official action.")

Plaintiff alleges that it is an official policy and custom of the BPD and City of Boston to retaliate against employees who complain about unlawful and dishonest actions by high-ranking BPD personnel, and to try and cover up said actions, rather than investigate and correct them. (C ¶ 200-203) Plaintiff describes actions by multiple high ranking individuals within the BPD and the City, including former Commissioners Evans and Davis, current Commissioner Gross, Director of Public Records Shawn Williams, Amy Ambrick and Nicole Taub in the Office of the Legal Advisor, Captain Kenneth Fong (former Internal Affairs Superintendent), Internal Affairs Supervisor Lieutenant Detective Christopher Hamilton, Chief Daniel Linskey, Commander Captain Haseeb Hosein, Internal Affairs Division Investigator Sergeant Detective John Puglia, Internal Affairs Investigator Sergeant William Chinetti, Lieutenant Detective Brian McEachern

and Sergeant Detective Courtney Matthews from the BPD Anti-Corruption Division, Internal Affairs Investigator Lieutenant Detective Fred Williams, and Lieutenant Detective Adrian Troy to name a few. (C ¶¶ 52, 100-120.)  The two letters attached as to the City's Motion to Dismiss were written by Plaintiff to high-ranking officials who refused to process his complaint or investigate. Exhibit A was sent to Commissioner Ed Davis. Exhibit B was sent to Internal Affairs Investigator Sergeant Detective John Puglia. The top of the Exhibit is cut off but Plaintiff notes the addressee of this letter in his Complaint.  (C ¶ 104, 105.)  Exhibit B to Plaintiff's Complaint shows another high ranking person (Shawn William) is currently involved in Defendants' continuing efforts to conceal information from Plaintiff (violating the January 2019 Order to produce the IAD report to Plaintiff as a public record. (C ¶ 159-168)

Plaintiff alleges various actions by these individuals that violated his constitutional rights. These actions were the moving force behind his injuries; while it is true that if Fong had followed the BPD disciplinary rules and procedures, he would never have initiated the accusation against Plaintiff in the first place.  If Taub had done her job and complied with the Public Integrity Policy she would have turned over the IAD report before the arbitration and not falsified evidence. If the other individuals noted above had investigated Plaintiff's concerns as they were required to do, they would have recognized the misconduct and removed the untruthfulness determination from Plaintiff's record, reducing the harm he faced from Fong and Taub's actions. So it is clear these actions were the moving force behind the harm Plaintiff has suffered, including his lost wages and other monetary losses, harm to his professional and personal reputation, harm to his ability to perform his job as a police officer, and his ability to participate in basic life activities, and harm to his emotional and physical health. (C ¶203, 205,171-185, 190)

Defendants have shown "deliberate indifference" by their conscious choice to refuse to investigate plaintiff's complaints, so their failure to sufficiently train employees on these procedures serves as a basis for § 1983 liability. *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), citing *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Since the allegations in the complaint satisfy the "deliberate indifference" rule of liability, plaintiff should have an opportunity to prove his case under that rule. Also, the allegations show the City's official policies and custom of deliberately withholding exculpatory material was the moving force behind plaintiff's injury. *See Haley v. City of Boston,* 2013 U. S. Dist. LEXIS 130558.

### C. Plaintiff has properly pled a violation of Section 1981 (Count II)

#### i. Plaintiff's claim is timely

Defendants argue that the claim is subject to a 4-year statute of limitations and is time barred. This argument fails under the same legal theories supporting the timeliness of the section 1983 claim discussed later in this brief (recent unlawful acts in 2018 and 2019, and the fraudulent concealment/equitable tolling and continuing violation). To date, the BPD is continuing to apply its Internal Affairs investigation procedures in a racially discriminatory manner as explained above. They have shown a complete unwillingness to investigate the conduct of their white lawyer alleged by a black officer, and have not even assigned a complaint control number to plaintiff's complaint, even though they are required under their own Rules and Procedures (Rule 109) to do this for ALL complaints received regarding misconduct by BPD personnel. (C ¶ 117-121) Defendants have failed to provide a legitimate non-discriminatory reason for their conduct.

### ii. __Plaintiff has satisfied the pleading requirement linking race to the violations__.

Plaintiff has met the requisite *Comcast* standard cited by Defendants. He alleges that he did not receive the same legally protected rights as a white person (Taub) with regard to the BPD rules for investigation of complaints. (C ¶117-121, 159-169, 213-214) The Complaint contains sufficient allegations that Defendants would have acted differently if Plaintiff was white. If Defendants had applied the BPD rules regarding investigation of complaints in a racially neutral manner, they would have investigated Taub's actions and recognized the untruthfulness determination was baseless, and removed it from plaintiff's file. The Complaint alleges that but for Defendants' refusal to investigate Taub (which it did because she is white), Plaintiff would not have suffered the loss of the various legally protected rights refenced in the Complaint. The *Comcast* decision does not require plaintiff to necessarily use the specific words "but for" race as a sort of buzzword, and the absence of this particular buzzword from the Complaint cannot be the basis for dismissal where the allegations show that is what is being alleged.

### iii. __Plaintiff has pled a violation of several rights identified in section 1981, including contract rights.__

Contrary to defendants' assertion, Plaintiff has identified an impaired contract. His employment relationship with BPD has been impaired, including, but not limited to, his right to have BPD follow its own procedures. Additionally, the protection of § 1981 is not confined to contractual matters when a governmental entity is involved, and any racially motivated misuse of governmental power falls within the ambit of its "equal benefits" and "like punishment" clauses. *See Mahone v. Waddle*, 564 F.2d 1018 (3rd Cir. 1977), *cert. denied,* 438 U. S. 904 (1978); *Hall v. Pennsylvania State Police,* 570 F.2d 86 (3rd Cir 1978). Plaintiff alleges that he is not subjected to like punishment as compared to white BPD personnel, including Taub. Plaintiff claims (C ¶ 213)

that Defendants have treated him less favorably than white employees, including, but not limited to, Taub, with respect to various benefits, privileges, terms and conditions of employment, including, but not limited to, the disciplinary process, the handling of complaints against Department personnel, application of personnel policies and BPD rules, the BPD public integrity policy, rules governing exculpatory evidence and falsification of evidence, and other aspects of the employment relationship with BPD. The act is not confined to deprivation of the right to contract. *Mahone* at 1027. Racially motivated police abuses are actionable under 1981. *See Raffety v. Prince George's County,* 423 F. Supp 1045 (D. Md. 1976). In *Mahone*, the City, through its police department, subjected plaintiffs to punishment that white persons were not subjected to and without justification, and were convicted by false testimony of crimes they did not commit. These allegations fall within the broad language of the Equal Benefits and Like Punishment clauses of section 1981. *See Mahone* at 1028.

### iv.    **Plaintiff has pled a practice or custom that led to violation of his section 1981 rights.**

Plaintiff has successfully pled that the violation of his section 1981 rights was caused by a custom or policy of the City. The Complaint shows the deprivation of rights was a result of a municipal policy. As discussed above in the section 1983 section, Plaintiff was faced with the same unwillingness to investigate at every point in the process. Every BPD representative he sought help from refused to listen and acted to cover up Taub's misconduct, even the BPD Anti-Corruption department whose job it is to prevent this widespread conduct. This satisfies the standard under *Monell.* Also, a local government can be liable for a constitutional violation if it has a policy of inaction and inaction amounts to a failure to protect constitutional rights. See *City of Canton v. Harris*, 489 U. S. 378, 388-89, 109 S. Ct. 1197, 103 L.ed. 2d 412 (1989).

**D. Plaintiff has properly pled a claim for conspiracy under section 1985 (Count III)**

Defendants cannot rely on *Ziglar* and *Bourne* as a basis for dismissal because, in the instant matter, the allegations in the Complaint show Defendants knew or reasonably should have known they were violating the law, and therefore would not be entitled to qualified immunity. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867-1869 (2017). Thus, there can be an intra-corporate conspiracy under the facts of this case as distinguished from the situation in *Bourne*.

**E. Plaintiff's claims are timely based on Defendants' recent unlawful actions, and based on tolling of the statute of limitations.**

Plaintiff's claims are timely under the doctrines of "fraudulent concealment/equitable tolling" and "continuing violation." The same analysis pertains to his claims under section 1983 (Count I), section 1981 (Count II), section 1985 conspiracy (Count III), fraud (Count XII), tortious interference (Count XIV), defamation (Count XI) and M.G.L. c. 150C (vacating arbitration decision)(Count XIII).

**i. Fraudulent concealment / equitable tolling**

It is difficult to understand how Defendants can say the claims are time barred when they are continuing to act unlawfully toward Plaintiff as it relates to this matter. Defendants continue to unlawfully conceal the IAD report that is central to the dispute, as evidenced by the Order issued by the Supervisor of Records for the Commonwealth. Also, Defendants are still refusing to assign a complaint control number to Plaintiff's complaint and investigate it, even with the newly discovered evidence and compelling issues of public concern. Fraudulent concealment is a tolling doctrine codified in Mass. Gen. Laws. c. 260, s. 12. *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189 (1st Cir. 2006). It tolls the statute of limitations where there is some affirmative act on the part of the defendant to conceal or coverup the wrongful conduct which underlies the action.

*Mowbray v. Waste Mgmt. Holdings, Inc*., 90 F. Supp. 2d 135, 140 (D. Mass. 2000) and cases cited.

Defendants argue the doctrine does not apply and cites to *Harry v. Countrywide Home Loans, Inc*., 219 F. Supp.3d 228 (D. Mass. 2016), *aff'd*, 902 F.3d 16 (1st Cir. 2018). This fails because unlike the plaintiff in *Harry*, Plaintiff Holder did not know of the facts giving rise to his cause of action at the time of the arbitration in 2013. He did not know the IAD report existed until late 2017. Also, in *Harry,* the plaintiffs did not allege any deception by the Defendants, but state that Defendants were willingly in communication with them, as distinguished from the instant case where Plaintiff is alleging that Defendants have refused to communicate with him at all and have intentionally concealed a report that is central to the case. *Id* at 236. Also, in *Harry* the plaintiffs did not make a showing that they exercised due diligence, so the statute of limitations was not tolled, but here Plaintiff definitely showed due diligence. He made multiple inquiries with BPD, seeking information and relevant documents regarding the matter to no avail, and to date has been completely ignored and provided with no information. This is not simply a situation where Plaintiff came into possession of evidence in late 2017 that would have supported a claim that he knew existed in 2013 as Defendants argue. It gives rise to a separate cause of action, and is part of the same pattern of misconduct. This case is easily distinguished from *Harry* on the facts.

The doctrine of equitable tolling suspends the statute of limitations here because plaintiff exercised reasonable diligence and could not have discovered information essential to the suit. *Bernier v. Upjohn Co*., 144 F.3d 178, 180  (1st Cir. 1998).

*Shafnacker* and *Taygeta* and other case law cited by Defendants requires tolling the statute of limitations in this case.  It was not until late 2017 (December) that Plaintiff learned of

the existence of the exculpatory IAD report that directly refuted Taub's false statements to the arbitrator and showed the arbitration ruling was incorrect. (C ¶ 130, 131) The BPD had a legal duty to provide Plaintiff and the arbitrator with the report but failed to do so, and has continued to withhold it to date in violation of the Personnel Record Law and the Public Record Law. (C ¶ 132, 159-168) If the report had been given to the arbitrator it would have changed the result, and he would have ruled in Plaintiff's favor. (C ¶ 122-129, 132) If plaintiff had been in possession of the report at the time of the arbitration he would have appealed any adverse ruling. (C ¶ 133)

The Supreme Court has held that state tolling statutes apply to section 1983 and 1981 cases. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980).; *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465. The guiding principle behind the doctrine of equitable tolling is that "the law should be used to achieve some approximation of justice." *Niehoff v. Maynard*, 299 F.3d 41, 52 (1st Cir. 2002.) If Plaintiff's claims are dismissed, he will be again deprived of justice by his employer who will not follow the law or its own Rules and Procedures.

### ii.   <u>Continuing violation</u>

Plaintiff's claims are not time barred since there is a continuing violation which tolls the statute of limitations. Plaintiff may recover for events outside of the statute of limitations period if those events were part of an ongoing pattern of conduct. *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001); <u>*Cordero-Suárez v. Rodríguez*</u>, 689 F.3d 77, 83 (1st Cir. 2012); <u>*Phillips v. City of Methuen*, 818 F. Supp. 2d 325, 330 (D. Mass. 2011)</u>; *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 750 N.E.2d 928, 936-37 (Mass. 2001). This doctrine applies here because there is at least one instance of unlawful conduct occurring within the limitation period; the timely act has a substantial relationship to the untimely acts; and the plaintiff could

not have formed a reasonable belief at the time of the pre-limitations period events that they were actionable. *Ocean Spray Cranberries, Inc. v. MCAD*, 441 Mass. 632, 642-43 (2004).

The Supreme Court has recognized that the continuing violation doctrine applies to section 1983 claims. *AMTRAK v. Morgan*, 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (where the plaintiff alleges an ongoing policy of violations of his constitutional rights, and that some action in furtherance of that policy was taken within the statute of limitations, the continuing violation doctrine applies.) *See Dantzler, Inc. v. P.R. Ports Auth*, 335 F. Supp. 3d 226, 251-252 (D.P.R. 2018).   It is acknowledged that a continuing violation is not established where there is simply a continuation of harm caused by a previous but terminated tortious or unlawful conduct. *Taygeta Corp. v. Varian Assocs., Inc*., 436 Mass. 217, 231 (2002). Here the unlawful conducted has not ended.  Defendants are continuing to engage in unlawful retaliatory conduct and fraudulent concealment.  For example, the City refused to provide Plaintiff with a complete copy of his personnel record after he requested it on September 26, 2018. (262)  We know they provided an incomplete record because the personnel record given to the prosecutor by the BPD in December 2017 contained the IAD report (131) but the record produced to the Plaintiff in response to his request did not.  (162, 163)  This violated the Personnel Record Law. (262-264).  Another act of retaliation and concealment occurred in January 2019 when the City refused to comply with an official Order to produce the IAD report to Plaintiff (the January 9, 2019 Order from the Supervisor of Records for the Commonwealth). (165-168)

The content of the Order (Exhibit B to Plaintiff's Complaint) reveals that Defendants are continuing to retaliate and fraudulently conceal information: as one of its justifications for not producing the report under the Public Record Law, it stated that Plaintiff's attorney had a

"unique right of access" to the document. But the Supervisor of Records immediately recognized this was a false statement since Plaintiff's attorney had in fact been denied access. (266, Exhibit B to Plaintiff's Complaint, p.2) In August 2019, Defendants retaliated against Plaintiff for having reported the matter to the Supervisor of Records, by assigning him to work under Fred Williams, who treats Plaintiff with hostility because he had been directly involved in rejecting Plaintiff's complaints in 2014, and is angry Plaintiff is still pursuing the matter. (C193-197 )

Defendants' recent conduct relates to the previous unlawful conduct. They have refused to produce a document that is central to Plaintiff's case and which should have been given to him in 2008, and that document shows that the 2013 arbitration decision was incorrect. Defendants admit in a letter dated 9/27/2018 that the document is related to the prior events as "the report contains information that was used to determine the charges that were levied against ..Detective Holder." (See Exh B to Plaintiff's Complaint.) Defendants' pattern of concealing pertinent information and evidence from Plaintiff, and refusing to investigate his concerns about this, cannot be viewed as time barred because Defendants' most recent unlawful acts occurred in 2018 and 2019 and are directly related to their previous conduct and the 2013 arbitration decision. Plaintiff's claims are timely under the "fraudulent concealment/equitable tolling" and "continuing violation" doctrines, as defendants have engaged in unlawful acts within the limitations period, which tolls the statute of limitations as it relates to the earlier acts.

Under these same theories, Plaintiff's claims are within the statute of limitations for violations of the Whistleblower Statute (Count V), M.G.L. c. 150C (Count XIII) and common law fraud (XII), tortious interference (Count XIV) and defamation (Count XI).

**F. Plaintiff's claim under the Whistleblower Law is timely and he had alleged a threat to the public's well-being. (Count V)**

Plaintiff's whistleblower claim is timely. Although he complained of the unlawful conduct in 2013 as Defendants point out, the statute of limitations has been tolled under the fraudulent concealment/equitable tolling and continuing violation doctrines noted above. Moreover, considering the recent whistleblower conduct and retaliation, the earliest date the clock could possibly begin to tick on this claim would be sometime AFTER March 22, 2018, since that is when Plaintiff sent the complaint letter to Defendants regarding the report that had been unlawfully concealed. (C ¶ 134). It began to tick in October and November 2018, when Defendants retaliated against Plaintiff by specifically withholding the report when responding to Plaintiff's September 2018 public record request for the IAD file, and personnel file request. (Defendants responded to these requests in October and November 2018, respectively, refusing to provide the IAD report even though Plaintiff had specifically requested that it be included.) (C 160-163; See Exh. B to Plaintiff's Complaint.) This constituted "retaliatory action" under M.G.L. c. 149, s. 185(a)(5) which is prohibited under subsection (b).

Plaintiff then submitted the complaint letter to the BPD on December 18, 2018 referencing the upcoming trial and the concern over Plaintiff being a Giglio-impaired witness at that proceeding. (C 187)(See Exh. B attached hereto.) On December 23, 2018 he submitted an appeal to the Supervisor of Records for the Commonwealth of MA, challenging the denial of access to the report. (C ¶ 164) As noted, Defendants retaliated by withholding it for no legitimate reason and assigning him to Lt. Williams. Clearly the whistleblower claim is timely in light of these recent events and the equitable tolling and continuing violation doctrines.

Defendants also argue that the claim fails because Taub's conduct during the arbitration does not involve public health, safety or the environment, and did not pose a risk to anyone

except Plaintiff. First this argument fails because Plaintiff's complaint raises issues about the integrity of BPD personnel which impacts all citizens whom they serve (as explained above in the analysis above pertaining to public speech on "matters of public concern.") Also, as explained above, it raises concerns about public safety (safety of crime victims) since Taub's conduct has rendered Plaintiff a Giglio impaired witness. Finally, the fact that the report being concealed has been deemed a "public record" by the Supervisor of Records for the Commonwealth establishes conclusively that is pertaining to matters of public concern.

The claim also survives because M.G.L. c. 149, s. 185(b)(1) applies regardless of whether there is a public safety issue, whenever the employee reports conduct that he believes violates a law or rule, which happened here, in 2013 and 2014, and again in 2018 after Plaintiff learned the IAD report had been concealed.

### G. <u>Plaintiff has alleged violations of the Personnel Record Law (Count VI)</u>

Defendants' argument about the alleged binding effect of the arbitration decision has no bearing on Plaintiff's claims under this Law. Plaintiff's claim is based on Defendants' failure to provide him with a copy of the unredacted IAD report. The report is in his personnel record. (C 257). We know this because the personnel record the BPD gave to the prosecutor in December 2017 (in response to the *Brady/Giglio* request) contained the IAD report (131) Defendants failed to provide the report to Plaintiff in response to his September 26, 2018 personnel record request. (262) Failure to provide a complete personnel file upon request violates M.G.L. c. 149, c. 149 s. 52C. It is clear Defendants violating this law by providing an incomplete record, because the personnel record given to the prosecutor contained the report and the one given to Plaintiff did not. (162, 163, 262-264).

Defendants had a duty to give Plaintiff the report in 2008 because it formed the basis for Fong's accusations and ultimately the suspension Plaintiff served. (C 258). Defendants admit in a letter dated 9/27/2018 that "the report contains information that was used to determine the charges that were levied against ..Detective Holder." (See Exh B to Plaintiff's Complaint.) Under the Personnel Record Law, information used to take negative personnel action against an employee must be provided to the employee so that he is advised of the specific accusations against him and has a meaningful opportunity to provide facts to refute the accusations. *See Hill v. Bratton*, 5 Mass. L. Rep. 41 (1995); *see Wakefield Teacher's Association v. School Committee*, 431 Mass. 792 (2000). Failure to do so in a timely manner (typically 10 days) can lead to imposition of a civil fine under this Law. This statute applies to private and public employers. Plaintiff has properly pled a violation of this Law and since Defendants have still not produced the record, the violation is ongoing at this time.

## H. The Existence of Another Adequate Remedy does not Preclude a Claim for Declaratory Judgment (Count VIII).

Det. Holder has properly alleged facts which would entitle him to relief under the Massachusetts declaratory judgment statute, M.G.L. ch. 231A. The purpose of ch. 231A is "to remove, and afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations." *Fenestra Inc. v. Mared Bldg. Products, Inc*., 212 N.E.2d 474, 475 (Mass. 1965). The statute provides that the declaratory judgment procedure "may be used to secure determinations of right, duty, status or other legal relations under…a charter, statute, municipal ordinance or by–law, or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination." M.G.L. ch. 231A, § 2. "In order to bring an action for declaratory relief under G. L. c. 231A, §§ 1 & 2, there must be both an actual controversy and legal standing." *United Oil Paintings, Inc. v.*

*Commonwealth*, 572 N.E.2d 13, 15 (Mass. App. Ct. 1991).[1]  An "actual controversy" exists when there is "a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation." *Bunker Hill Distrib., Inc. v. District Attorney for Suffolk Dist.,* 376 Mass. 142, 144 (1978).  In order to have standing for purposes of the statute, a plaintiff must have "a definite interest in the matters in contention in the sense that his rights will be significantly affected by a resolution of the contested point." *Bonan v. Boston*, 496 N.E.2d 640, 644 (Mass. 1986).

By way of Count VIII, Det. Holder seeks a declaration from the Court, pursuant to ch. 231A, that the City/BPD must release the full, unredacted IAD Report. *C*, ¶¶300-304.  The allegations in the complaint clearly illustrate Det. Holder's standing and the presence of an actual controversy for purposes of ch. 231A.  There is an actual controversy because Det. Holder has repeatedly sought production of full IAD Report, and the City has repeatedly denied those requests, despite being ordered by the Commonwealth's Supervisor of Records to produce the unredacted report.  Detective Holder also clearly has standing under the statute, since he has a definite interest in discovering the full contents of the IAD Report, which is a crucial document relating to the charges against him and his suspension.

---

[1]     This Court has previously noted that where an action asserts a claim under the Massachusetts Declaratory Judgment Act (M.G.L. ch. 231A, § 1), but has been removed to federal court, "whether this Court may grant a declaratory judgment must be reviewed under the standard of the federal Declaratory Judgment Act, 28 U.S.C. § 2201." *Traincroft, Inc. v. Ins. Co.,* 2014 U.S. Dist. LEXIS 85170, *16 (D. Mass., June 23, 2014).  However, for the purpose of a motion to dismiss, "the inquiry is essentially the same under the state and federal statutes." *Traincroft*, 2014 U.S. Dist. LEXIS at, n.5.

The City, meanwhile, contends that Count VIII should be dismissed because the Public Records Law and Personnel Record Law provide adequate remedies for the parties' dispute over the IAD Report. This is not a basis for dismissal of a declaratory judgment claim. A claim for declaratory judgment is procedural, and is governed in the federal courts by Fed. R. Civ. P. 57. *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 351 (3rd Cir. 1986). Rule 57 provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." See also *Fenestra Inc. v. Mared Bldg. Products, Inc.,* 212 N.E.2d 474, 475 (Mass. 1965) ("[a] bill for declaratory relief lies even though there may be a remedy at law.").

Additionally, the determination which the City seeks with respect to Count VIII is best reserved for a later stage of litigation. Based on the City's argument, the Court would need to conclude now that a declaratory judgment is unnecessary because Det. Holder is entitled to relief under the Public Records Law and/or the Personnel Record Law. It is, however, not the Court's role at this stage to determine whether Det. Holder is entitled to any of the remedies which he seeks. See *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974 ("When a federal court reviews the sufficiency of a complaint…[t]he issue is not whether a plaintiff will ultimately prevail."). Dismissal of the declaratory judgment claim on this basis would surely be considered improper if the court later concludes that Det. Holder is not entitled to relief under the Public Records Law or the Personnel Record Law.

I. **Plaintiff has properly pled a claim for Expungement (Count IX)**

Plaintiff's expungement claim is based on his right to the correction of false information that appears in his personnel record. (C 306) This right exists under the Personnel Record Law. *Kessler v. Cambridge Health Alliance*, 62 Mass. App. Ct. 589 (2004). Plaintiff is requesting

removal of the untruthfulness determination because it is based on false information. (310, 316) It is unfair to him and the crime victims he assists to let it remain. (315) Contrary to Defendants' argument, the 2013 arbitration decision does not provide a basis for dismissal of Plaintiff's expungement claim. He can still have a viable claim regardless of the arbitration decision, as the BPD has the authority and obligation to remove the untruthfulness determination under the Personnel Record Law. *See City of Cambridge v. Civil Service Commission*, 43 Mass. 300, 303 (1997). Also, the claim must not be dismissed because there are multiple grounds for vacating the arbitration award (fraud, lack of authority, due process violations, public policy).

### J. Count XII Properly States a Claim for Fraud Against Taub and Fong.

By way of Count XII, Det. Holder has properly pleaded a claim for fraud against Taub and Fong. Specifically, Det. Holder has alleged that Taub intentionally misrepresented the contents of the IAD Report and also withheld the Report, when she had a duty to disclose it. Det. Holder relied on Taub's misrepresentations and concealment because if he had known about the contents of the IAD Report, he would have directed an appeal of the arbitrator's ruling. As a result of Taub's fraud, Det. Holder has suffered the economic and non-economic injuries detailed in his complaint. Doc No. 1, at ¶¶337-357. As for Fong, it was his duty as the senior officer initiating the February 2008 charges against Fong to see that a copy of the IAD Report was provided to Det. Holder.

In support of her effort to dismiss Count XII, Taub only contends that Det. Holder could not have detrimentally relied on any of her false statements or concealment because only the Boston Police Patrolmen's Association (the "Union") could have appealed the arbitrator's ruling. Taub and Fong contend that because Det. Holder could not have individually appealed the ruling, "his allegation that he would have appealed the arbitrator's finding if not for Taub's fraudulent

conduct is incorrect, as a matter of law." <u>Doc. No. 10</u>, at pg. 27. Det. Holder, however, is of

course a Union member. It almost goes without saying that as a member, he could have

requested or caused the Union to appeal the arbitrator's ruling on his behalf. Any dispute that

he could have done so is purely an issue of fact which is inappropriate for determination at this

stage.

### i.   <u>Defendants Taub and Fong are Not Protected by the Litigation Privilege.</u>

Contrary to Taub and Fong's assertions, the litigation privilege does not provide

Defendants Taub and Fong with absolute protection from the claims which Det. Holder has

asserted against them. As the parties asserting the privilege, Taub and Fong of course have the

burden of establishing entitlement to the privilege. *Shirokov v. Dunlap, Grubb & Weaver PLLC,*

2012 U.S. Dist. LEXIS 42787, *63 (D. Mass., March 1, 2012). "Whether an absolute privilege

applies is determined on a case-by-case basis, after a fact-specific analysis…[A] motion to

dismiss on the basis of the litigation privilege only succeeds when the entitlement to the privilege

is demonstrated by the complaint itself. If the complaint construed in the plaintiff's favor does

not support the application of the privilege, the issue is more properly resolved on a motion for

summary judgment or at trial." *Shirokov v. Dunlap, Grubb & Weaver PLLC*, 2012 U.S. Dist.

LEXIS 42787, *63-64.

Where, as here, a plaintiff's complaint plausibly alleges that a defendant's actions have

perverted the judicial process, the litigation privilege provides no protection. "The purposes of

the [litigation] privilege are never served by allowing counsel to practice deceit and deception in

the course of litigation, nor by permitting counsel to make false and misleading statements in the

course of judicial proceedings…[W]hen…defendants have uttered words that prevent a fair

proceeding, the litigation privilege provides no relief." *Williams v. BASF Catalysts LLC*, 765

35

F.3d 306, 318 (3rd Cir. 2014) (finding that district court erred when it dismissed fraud and fraudulent concealment claims based on doctrine of litigation privilege).

Additionally, federal courts across the country have concluded that the litigation privilege does not bar federal causes of action. In *Shirokov*, *supra*, after concluding that the litigation privilege did not apply, this Court noted that even it did apply, there remained "an issue as to whether the privilege would bar anything more than [the plaintiff]'s state law causes of action." *Shirokov*, 2012 U.S. Dist. LEXIS 42787, at n. 11, *citing Steffes v. Stepan Co.,* 144 F.3d 1070, 1074 (7th Cir. 1998) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action"); *Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (California absolute litigation privilege does not immunize attorneys from liability under 42 U.S.C. § 1983); *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 708 (N.D. Ill. 2006) (Illinois litigation privilege cannot confer immunity against Lanham Act claims). Taub and Fong, meanwhile, have failed to point to any federal case law holding that the litigation privilege would serve as a bar to claims under 42 U.S.C. §§1983 or 1985.

### ii. The Issue of Whether Taub and Fong Are Entitled to Prosecutorial Immunity is Not Appropriate for Determination at This Stage.

At this stage of litigation, it is simply too early to permit Defendants Taub and Fong to absolutely shield themselves from liability based on the doctrine of prosecutorial immunity. As this court has noted, "absolute [prosecutorial] immunity is rare and exceptional." *SBT Holdings, LLC v. Town of Westminster*, 541 F. Supp. 2d 405, 414 (D. Mass. 2008), *citing Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified. That burden is a heavy one." *Penate v. Kaczmarek*, 928 F.3d 128, 135 (1st Cir. 2019). "In civil rights cases in particular the doctrine of official immunity should be applied sparingly." *Williams v. Codd*, 459 F. Supp. 804, 817 (S.D.N.Y. 1978)

Prosecutorial immunity "protects those acts which are closely associated with the judicial process and which are performed in the course of the prosecutor's role as an advocate…However, a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Cignetti v. Healy*, 89 F. Supp. 2d 106, 113-114 (D. Mass. 2000). This determination requires a fact-intensive analysis which is inappropriate for this stage of litigation. In fact, in the *Cignetti* case which Taub and Fong rely heavily upon in their brief, the court denied the defendants' motion to dismiss the complaint on grounds or prosecutorial immunity, noting that the facts at that stage were "not sufficient to permit a finding that all or any of [the defendants'] actions [were] immune." *Cignetti v. Healy*, 967 F. Supp. 10, 15 (D. Mass., May 22, 1997). Here, the Court should similarly permit reasonable discovery to be conducted in order to determine whether Taub and Fong are entitled to the exceptional and absolute protections of prosecutorial immunity.

### K.  <u>Count XIII: Request to Vacate Arbitration Award: M.G.L. c. 150C (BPD and City of Boston)</u>

This claim is timely under the equitable tolling and continuing violation doctrines noted above. Plaintiff presents multiple reasons to vacate the award. (C 368-385) One is that it was procured by fraud (withholding the IAD report). That same fraudulent activity is continuing so long as Defendants are violating the January 2019 Order. Plaintiff also claims the arbitrator lacked authority to decide the issue (380-385) which is a jurisdictional question that can be addressed at any time. Plaintiff also alleges he lacked notice of the accusations against him due to Fong, Taub and the BPD withholding the IAD report from him, so the award cannot stand. (382). To this day he lacks notice because he still does not have the full report that formed the basis for the accusations. He only has the heavily redacted version.

Additionally, considering the circumstances, it is proper to vacate the award pursuant to M.G.L. c. 150C, s.11 because it offends public policy, violates Plaintiff's civil rights (due process), and because it is a product of Defendants' unlawful act of withholding a personnel record. *City of Boston v. Boston Police Patrolmen's Ass'n,* 443 Mass. 813 (2005); *Pittsfield v. Local 447,* 480 Mass. 634, 107 N.E.3d 1137 (2018); *Suffolk County Sheriff v. AFCME Council 93, Local 3643*, 16 Mass. L. Rep. 511 (2003); *Hill v. Bratton*, 5 Mass. L. Rep. 41 (1995).

## L. __Count XV Properly States a Claim for Defamation Against Taub and Fong__.

Taub and Fong's motion to dismiss attacks Count XV (Defamation) relies on the same contentions common to all of the counts asserted against them: 1.) that their actions are protected by the litigation privilege; 2.) that they are protected by absolute prosecutorial immunity; and 3.) that the claim is time-barred.  For the same reasons addressed above, however, they are not protected by the litigation privilege and the issue of prosecutorial immunity should not be determined at this stage.  Finally, Det. Holder's claim for defamation did not accrue until December 2017, when he was shown the IAD Report and learned of Taub's factual misrepresentations concerning the Report.

## M. __Commissioner Gross is a Proper Defendant.__

Commissioner Gross is not entitled to be dismissed from this action simply because the City has also been named as a defendant.  The commissioner for the BPD is a proper defendant in civil rights actions.  As this Court has explained,

> In order to state a claim for relief under §1983, plaintiffs must allege that a person acting under color of state law deprived them of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Further, plaintiffs must plead facts from which [the court] may infer 'personal involvement' by the Commissioner in the alleged constitutional violations.  Inaction by a supervisor who knew or reasonably should have known of a pattern of unconstitutional action by his subordinate is the equivalent of approval of the behavior and may

38

> constitute the requisite level of participation to serve as the basis for liability under §1983. Accordingly, the Commissioner may be held liable if his actions in failing to correct the BPD were so severe as to reach the level of 'gross negligence or deliberate indifference'.  Moreover, the failure of a supervisor to fulfill a statutory mandate, the fulfillment of which would rectify the unconstitutional condition, may itself violate §1983.

*Walker v. City of Boston*, 1983 U.S. Dist. LEXIS 16691, *4-6 (D. Mass., May 25, 1983)

(denying police commissioner's motion to dismiss §§1983 and 1986 counts asserted against him).  Det. Holder has clearly met these pleading requirements.  As alleged in his complaint, Det. Holder notified the Commissioner in writing of the unfairness of the charges and ruling against him, and that in response, the BPD not only ignored his requests, but retaliated against him by removing his active duty status, suspending his license to carry, and seizing his personal firearms from his residence. *C*, at ¶¶99-100.[2]  Det. Holder further alleges that the Commissioner retaliated against him by denying him a promotion and advising him that he needed to undergo a psychological evaluation. *C*, at ¶¶114-115.

WHEREFORE, Plaintiff Alvin Holder respectfully requests that this Honorable Court deny the defendants' motions to dismiss as to the counts addressed herein.

---

[2]      As stated in the Complaint, Det. Holder's October 7, 2013 letter was sent to Commissioner Edward Davis.  Accepting the City's contention that under Fed. R. Civ. P. 25(d), a defendant named in his official capacity who is no longer holds office is automatically substituted as a party by his successor, Commissioner Gross would be required to answer for all allegations and claims asserted against former Commissioners Davis and Evans.

Respectfully submitted,
Plaintiff Alvin Holder,
By His Attorneys,

  /s/ Jeffrey H. Katzenstein
Jon A. Halaby (BBO No. 666003)
*jonhalaby@halabylegal.com*
Julie A. Halaby (BBO No.
*juliehalaby@halabylegal.com*
Jeffrey H. Katzenstein (BBO No. 674749)
*jeffkatzenstein@halabylegal.com*
**Halaby Law Group, P.C.**
14 Main Street
Hingham, Massachusetts 02043
Tel: (781) 749-0909
Fax: (781) 749-0997

Dated: May 4, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system shall be sent electronically to the registered participants as identified in the Notice of Electronic Filing and - paper copies shall be sent to those indicated as non-registered participants on May 4, 2020.

  /s/ Jeffrey H. Katzenstein