

City of Boston
Mayor Martin J. Walsh
Law

FILED
IN CLERKS OFFICE

2020 JUN -4 AM 11: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

June 2, 2020

**VIA FIRST CLASS MAIL**
Civil Clerk's Office
United States District Court
District of Massachusetts
One Courthouse Way
Boston, MA 02210

Re:   ***Holder, Alvin v. Boston Police Department, City of Boston et al***
      **USDC, Dist. Of Massachusetts Docket No. 1:2019cv12207**
      **Suffolk Superior Court, Civil Action No. 2084CV00380**
      **Boston Law Department Case No. 20-0217**

Dear Mister or Madam Clerk:

Enclosed please find certified copies of all docket entries, records, and proceedings in the state court, as those copies were received from the Civil Clerk's Office of the Suffolk County Superior Court.

Thank you for your attention in this matter, and please don't hesitate to contact me with any issues or concerns.

Sincerely yours,

Ethan Katz
Paralegal
617-635-4029
Ethan.Katz@Boston.gov



**COMMONWEALTH OF MASSACHUSETTS**
**SUFFOLK COUNTY CIVIL**
**Docket Report**

**2084CV00380 Holder, Alvin vs. Boston Police Department, City of Boston et al**

| | |
|---|---|
| **CASE TYPE:** Contract / Business Cases | **FILE DATE:** 02/10/2020 |
| **ACTION CODE:** A04 | **CASE TRACK:** F - Fast Track |
| **DESCRIPTION:** Employment Contract | |
| **CASE DISPOSITION DATE** 04/17/2020 | **CASE STATUS:** Closed |
| **CASE DISPOSITION:** Transferred to another Court | **STATUS DATE:** 04/17/2020 |
| **CASE JUDGE:** | **CASE SESSION:** Civil F |

| PARTIES |
|---|

| | | |
|---|---|---|
| **Plaintiff**<br>Holder, Alvin | **Attorney**<br>Julie Anne Halaby<br>Halaby Law Group P.C.<br>Halaby Law Group P.C.<br>14 Main St<br>Hingham, MA 02043<br>Work Phone (617) 827-3923<br>Added Date: 02/10/2020 | 630124 |
| | **Attorney**<br>Jon Arthur Halaby<br>Halaby Law Group P.C.<br>Halaby Law Group P.C.<br>14 Main St<br>Hingham, MA 02043<br>Work Phone (781) 749-0909<br>Added Date: 02/10/2020 | 666003 |
| **Defendant**<br>Boston Police Department, City of Boston | **Attorney**<br>Edward F Whitesell<br>City of Boston Law Department<br>City of Boston Law Department<br>One City Hall Square<br>Room 615<br>Boston, MA 02201<br>Work Phone (617) 635-4045<br>Added Date: 04/13/2020 | 644331 |
| | **Attorney**<br>Nieve Anjomi<br>City of Boston<br>City of Boston<br>City Hall Rm 615<br>Boston, MA 02201<br>Work Phone (617) 635-4098<br>Added Date: 04/13/2020 | 651212 |
| **Defendant**<br>Edward Davis in his Official Capacity as former<br>Commissioner of the BPD | | |
| **Defendant**<br>Kenneth B Fong individually and in his Official<br>Capacity as BPD Captain | | |



**Defendant**
Nicole I Taub individually and in her Official Capacity
as Senior Staff Attorney fot the BPD Office of the
Legal Advisor

**Defendant**
Shawn Williams in his Official Capacity as Director of
Public Records and Records Access Officer for the
City of Boston and the Boston Police Department

**Defendant**
William Evan in his Official Capacity as former
Commissioner of the BPD

**Defendant**
William G Gross in his Official Capacity as the
Commissioner of the BPD

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| Date | Ref | Description | Judge |
| 02/10/2020 | | Attorney appearance<br>On this date Julie Anne Halaby, Esq. added for Plaintiff Alvin Holder | |
| 02/10/2020 | | Attorney appearance<br>On this date Jon Arthur Halaby, Esq. added for Plaintiff Alvin Holder | |
| 02/10/2020 | | Case assigned to:<br>DCM Track F - Fast Track was added on 02/10/2020 | |
| 02/10/2020 | 1 | Original civil complaint filed. | |
| 02/10/2020 | 2 | Civil action cover sheet filed.<br><br>(2.1M) (TRK) | |
| 02/10/2020 | | Demand for jury trial entered. | |
| 02/10/2020 | 3 | Alvin Holder's MOTION for appointment of Special Process Server.<br>South Coast Legal Services, Inc. d/b/a The Constable's Network | |
| 02/20/2020 | | Endorsement on Motion to Appoint Special Process Server (#3.0):<br>ALLOWED<br>(dated 2/12/20) notice sent 2/18/20 | Ames |
| 04/09/2020 | 7 | Service Returned for<br>Defendant Kenneth B Fong individually and in his Official Capacity as BPD<br>Captain: Service through person in charge / agent; | |
| 04/09/2020 | 8 | Service Returned for<br>Defendant Edward Davis in his Official Capacity as former Commissioner<br>of the BPD: Service made at last and usual; | |
| 04/09/2020 | 9 | Service Returned for<br>Defendant Shawn Williams in his Official Capacity as Director of Public<br>Records and Records Access Officer for the City of Boston and the Boston<br>Police Department: Service made at last and usual; | |
| 04/09/2020 | 10 | Service Returned for<br>Defendant William Evan in his Official Capacity as former Commissioner<br>of the BPD: Service made at last and usual; | |
| 04/09/2020 | 4 | Service Returned for<br>Defendant William G Gross in his Official Capacity as the Commissioner of<br>the BPD: Service made at last and usual; | |
| 04/09/2020 | 5 | Service Returned for<br>Defendant Nicole I Taub individually and in her Official Capacity as Senior<br>Staff Attorney fot the BPD Office of the Legal Advisor: Service made at<br>last and usual; | |
| 04/09/2020 | 6 | Service Returned for<br>Defendant Boston Police Department, City of Boston: Service through<br>person in charge / agent; | |
| 04/09/2020 | 11 | Service Returned for<br>Defendant Boston Police Department, City of Boston: Service through<br>person in charge / agent; | |



**COMMONWEALTH OF MASSACHUSETTS**
**SUFFOLK COUNTY CIVIL**
**Docket Report**

| | | |
|---|---|---|
| 04/13/2020 | | Attorney appearance<br>On this date Nieve Anjomi, Esq. added for Defendant Boston Police Department, City of Boston |
| 04/13/2020 | | Attorney appearance<br>On this date Edward F Whitesell, Jr., Esq. added for Defendant Boston Police Department, City of Boston |
| 04/13/2020 | 12 | Notice of Removal to the United States District Court filed by<br><br>Defendant City of Boston (US Dist # 20-cv-10656)<br><br>Applies To: Boston Police Department, City of Boston (Defendant) |
| 04/17/2020 | | REMOVED to the U.S. District Court<br>of Massachusetts |
| 04/17/2020 | | Case transferred to another court. |

I HEREBY ATTEST AND CERTIFY ON
April 28, 2020 , THAT THE
FOREGOING DOCUMENT IS A FULL.
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE.
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

First Asst. Clerk

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. _20-0 380F_

| | |
|---|---|
| ALVIN HOLDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BOSTON POLICE DEPARTMENT, | ) |
| CITY OF BOSTON, | ) |
| WILLIAM GROSS, in his Official Capacity | ) |
| as the COMMISSIONER OF THE BOSTON | ) |
| POLICE DEPARTMENT, | ) |
| WILLIAM EVANS and EDWARD DAVIS, | ) |
| each in his Official Capacity as former | ) |
| COMMISSIONER OF THE BOSTON | ) |
| POLICE DEPARTMENT, | ) |
| NICOLE TAUB, individually and in her | ) |
| Official Capacity as Former Senior Staff Attorney | ) |
| for the BOSTON POLICE DEPARTMENT, | ) |
| KENNETH FONG, individually and | ) |
| in his Official Capacity as | ) |
| BOSTON POLICE DEPARTMENT CAPTAIN, | ) |
| and SHAWN WILLIAMS, in his Official Capacity | ) |
| as DIRECTOR OF PUBLIC RECORDS AND | ) |
| RECORDS ACCESS OFFICER for the | ) |
| CITY OF BOSTON AND THE BOSTON | ) |
| POLICE DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff Alvin Holder, by and through his attorneys, Halaby Law Group, P.C., and complaining of the Defendants, alleges as follows:

## NATURE OF THE ACTION

This action arises from false accusations made by Boston Police Department ("BPD") personnel against Plaintiff, Boston Police Detective Alvin Holder, and ongoing actions by the BPD to cover up the dishonest acts of its personnel. The false accusations pertain to an October

19, 2005 off-duty incident where Plaintiff witnessed an accidental shooting involving two fellow off-duty officers. The BPD first accused Plaintiff of being untruthful when reporting the incident on the night it occurred. But when evidence surfaced refuting the accusation, the BPD constructed a new accusation, claiming that Plaintiff was untruthful when he was interviewed about the incident three months later by the Internal Affairs Division ("IAD").

An Arbitrator upheld the new accusation in 2013, but the IAD investigator's report surfaced in late 2017 showing that the Arbitrator's decision was incorrect, and that Defendants had committed fraud by misrepresenting the investigator's findings to the Arbitrator and withholding the report from evidence. Plaintiff sought relief through the BPD but it has refused to investigate or take action. Plaintiff now seeks relief through this Court to have the arbitration decision set aside and untruthfulness determination removed from his file.

This action concerns Defendants' violations of the following statutes: 42 U.S.C. § § 1983 and 1985 for depriving Plaintiff of his constitutional rights while acting under color of state law, and conspiring as a group to do same; 42 U.S.C. § 1981 for discriminating against Plaintiff on the basis of race under color of state law; Massachusetts collective bargaining law, G.L. c. 150E, § 10 for unfair labor practices including retaliation for exercising protected union member rights; Massachusetts Whistleblower Law, G.L. c. 149, § 185 for retaliating against Plaintiff after he complained about unlawful conduct; Massachusetts Personnel Record Law, G.L. c. 149, §52C for withholding the IAD report from Plaintiff as a personnel record, and failing to remove the untruthfulness determination; Massachusetts Public Records law, G.L. c. 66, § 10A for withholding the IAD report from Plaintiff as a public record in violation of the January 9, 2019 Order from the Massachusetts Supervisor of Records.

This action also concerns common law claims against individual Defendants for defamation and tortious inference with employment and advantageous business relationship. Defendants Fong and Taub's actions have harmed Plaintiff's reputation, opportunities for career advancement, and his credibility as a government witness (a key aspect of his job.) This is causing irreparable harm to Plaintiff and crime victims in the federal criminal justice system. Plaintiff also has a claim for conversion of property (he was deprived of his personal firearm for four years without justification) and fraud (for knowingly misrepresenting the IAD investigators findings to the Arbitrator, causing the Arbitrator to rule against Plaintiff.)

This action seeks monetary damages for economic and non-economic losses; declaratory relief (declaring the IAD report to be a public record or personnel record that must be produced to Plaintiff); equitable relief (including removal of the untruthfulness determination from Plaintiff's record by way of an injunction, expungement pursuant to G.L. c. 149, § 52C, and/or vacating the May 24, 2013 arbitration award pursuant to G.L. c. 150C, § 11); and other relief requested herein.

## PARTIES

1. Plaintiff Alvin Holder is an individual with a residential address of 4 Mansen Court, Hyde Park, Massachusetts, 02136.

2. Defendant Boston Police Department ("BPD") is Plaintiff's employer and is an agency of

2

the Defendant City of Boston with its headquarters located at 1 Schroeder Plaza, Boston, Massachusetts 02120.

3. Plaintiff has been employed with the BPD since 1998 and currently holds the position of Detective.

4. Defendant William G. Gross is currently serving as the Commissioner of the BPD.

5. Defendants William Evans and Edward Davis previously served as the Commissioner of the BPD at times relevant herein.

6. At times relevant herein, Defendant Nicole I. Taub was employed in the City of Boston Law Department as a Senior Staff Attorney for the BPD Office of the Legal Advisor.

7. At times relevant herein, Defendant Taub regularly represented the BPD in personnel matters including labor disputes and arbitrations.

8. Defendant Kenneth B. Fong is currently employed with the BPD serving in the role of Captain, and previously held other roles including Superintendent of the Internal Affairs Division at times relevant herein.

9. Defendant Shawn Williams is currently employed as Director of Public Records and Records Access Officer for the City of Boston and its agencies including the BPD.

10. Defendants Gross, Evans, Davis, Taub, Fong and Williams are all being sued in their official capacities and at times relevant herein, their usual place of employment is and/or has been in Boston.

11. Defendants Taub and Fong are also being sued individually with respect to the claims of tortious interference with employment and advantageous business relationship, and defamation.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the Defendants and the subject matter of this action because, among other reasons, the Defendants are Massachusetts citizens, a municipality within Massachusetts, and an agency of said municipality, and at times relevant herein, Defendants carried out law enforcement activities in and from Massachusetts, and committed torts in Massachusetts and violations of Massachusetts statutes including G.L. c. 66 § 10A (c), G.L. 150C, and G.L. c. 149, s. 52C. This Court has jurisdiction to hear the federal claims pursuant to the Supremacy Clause of Article VI of the U.S. Constitution.

13. Venue is proper in this county because Defendants' unlawful conduct originated in, was coordinated in, and was carried out from Suffolk County.

3

## **FACTUAL BACKGROUND**

14. Plaintiff is a highly decorated and respected police officer who has been employed with the BPD since 1998 and is currently serving in the role of Detective.

15. Plaintiff has a record of consistently positive job performance reviews, and with the exception of the situation that is the subject of this lawsuit, his record is free from any written reprimands.

16. At times relevant herein, Plaintiff was a member of the Boston Police Patrolmen's Association, a union representing police officers of the City of Boston. He is currently a member of the Boston Police Detectives Benevolent Society Union.

17. In the course of his employment with BPD, Plaintiff has testified as a witness for the prosecution in criminal trials, including multiple homicide cases that resulted in indictments and convictions.

18. Being able to serve as a credible government witness in criminal proceedings is an important part of Plaintiff's job.

## 2005 OFF-DUTY INCIDENT

19. On October 19, 2005 while off duty, Plaintiff was in the company of two fellow Boston police officers (Frank Lee and Eric Mencey) who were also off duty, along with an off-duty Boston firefighter (Rayshawn Johnson), when Lee accidentally discharged a firearm, injuring Mencey.

20. Plaintiff drove Mencey and Lee to the Faulkner Hospital so that Mencey could receive medical treatment.

21. Plaintiff notified Boston Police Lieutenant Patrick Cullity of the incident.

22. When notifying Cullity, Plaintiff provided him with the incident location which was Raldne Road in Hyde Park.

23. BPD personnel responded to the Raldne Road location, including Sergeant John Cunniffe, the District 18 supervisor.

24. BPD personnel also responded to the Faulkner Hospital.

25. Superintendent Bobby Johnson interviewed Plaintiff at Faulkner Hospital regarding the accident.

26. Superintendent Johnson asked Plaintiff who was shot and Plaintiff responded that it was Officer Mencey.

4

27. Superintendent Johnson asked Plaintiff who had the gun and Plaintiff responded that it was Officer Lee.

28. Superintendent Johnson asked Plaintiff who was driving the vehicle and Plaintiff responded that Plaintiff was.

29. When Superintendent Johnson asked Plaintiff to provide further details, Plaintiff explained it was an accidental discharge of the gun from the back to the front of the vehicle and that he would gladly answer more questions after speaking with his union representative, who had instructed him to refrain from answering further questions at that point.

30. Although Plaintiff answered Superintendent Johnson's questions about who was in possession of the gun, he did not directly tell Superintendent Johnson that Lee discharged the firearm and shot Mencey.

31. Plaintiff did not tell Superintendent Johnson that Lee shot Mencey because he had been instructed by his union representative Officer Jay Broderick to refrain from providing such details at that point.

32. Union attorney Thomas Drechlser advised Plaintiff of his Miranda rights at Faulkner Hospital.

33. Plaintiff invoked his Miranda rights per the instruction from the union attorney.

34. At the time, Officer Lee and Plaintiff were members of the same union (the Boston Police Patrolmen's Association).

35. In instructing Plaintiff to limit his communication with BPD investigating officers regarding the incident, the union representative was acting to protect the rights of union members including Officer Lee.

36. As a way for Plaintiff to provide investigating officers with sufficient information about the shooter's identity without jeopardizing the rights of his fellow union member, Lieutenant Cullity instructed Plaintiff not to give the specific name of the shooter but asked Plaintiff if it was "one of us" (i.e., a police officer.)

37. Plaintiff responded to Lt. Cullity's question by saying "yes."

38. Lee was not questioned or interviewed about the October 19, 2005 incident by Superintendent Johnson or any other BPD personnel while at Faulkner Hospital.

39. Lee spoke with union representative Officer Broderick and union Attorney Drechlser while at Faulkner Hospital, and invoked his Miranda rights.

40. Mencey received medical treatment in the Faulkner Hospital emergency department for

his gunshot wound.

41. Mencey was not questioned or interviewed about the October 19, 2005 incident by Superintendent Johnson or any other BPD personnel while at Faulkner Hospital.

42. Neither Supt. Johson nor any other BPD personnel attempted to contact eyewitness Rayshawn Johnson while at Faulkner Hospital or any time immediately thereafter.

43. In responding to questions from Supt. Johnson at Faulkner Hospital, Plaintiff provided the names of all individuals involved in the October 19, 2005 incident and listed the three BPD officers who were in the vehicle as himself, Lee and Mencey.

44. Although Plaintiff did not specifically state that Lee shot Mencey, Supt. Johnson knew on October 19, 2005 (the day it happened) that it was Lee who shot Mencey.

45. Supt. Johnson knew on October 19, 2005 that the shooter was Lee by process of elimination as he knew it was one of the other police officers in the vehicle besides Plaintiff and he knew Mencey had not shot himself, so the shooter had to have been Lee.

46. At no time did BPD personnel believe that the shooter was someone other than one of the police officers in the vehicle.

47. At no time did BPD personnel conduct a search for the shooter.

48. Mencey was released from the hospital and recovered from his injuries and continues to be employed with BPD.

**INTERNAL AFFAIRS**

49. The IAD was assigned to conduct an investigation of the October 19, 2005 incident.

50. The IAD investigation was triggered by Complaint Control form 1920, Complaint #5953 in which Plaintiff was accused of being untruthful <u>when reporting the incident on the night it occurred</u>.

51. As part of the investigation, Sergeant William J. Chinetti of the IAD interviewed Plaintiff on January 18, 2006.

52. In conducting his investigation, Sgt. Chinetti did not interview key witnesses including Superintendent Johnson or Lieutenant Cullity.

53. One purpose of the investigation was to evaluate Plaintiff's conduct on the night of the incident to assess the merits of the complaint and determine if disciplinary action against him was warranted based on same.

54. In a notice dated May 19, 2006, Plaintiff was advised that the IAD had sustained the

allegations in the complaint that Plaintiff was untruthful on the night of the incident.

55. Plaintiff was not told the IAD's findings with respect to why it sustained the allegations or how he allegedly lied on the night in question, despite Plaintiff's multiple requests for this information.

56. The withholding of the IAD's findings in this situation was contrary to BPD rules, practices and procedures.

57. On or about January 7, 2007, Plaintiff was presented with a settlement agreement from the BPD (dated September 7, 2006) which provided for a reduced suspension.

58. The proposed settlement agreement accused Plaintiff of being untruthful during an interview with Sgt. Det. Talbot when he allegedly told Talbot that he gave Supt. Johnson the facts of the firearm discharge (i.e., the name of the shooter.)

59. The accusation in the settlement agreement was different from the accusation contained in Complaint Control Form 1920, Complaint #5953.

60. Plaintiff did not sign the settlement agreement.

**WITHHOLDING OF FIREARM**

61. The BPD withheld Plaintiff's personal firearm for an extended and unreasonable period of time (four years) following the October 19, 2005 incident.

62. Beginning in early 2006, Plaintiff and his attorney Ken Anderson submitted written complaints to the BPD about the improper withholding of his firearm and requested that it be returned.

63. The BPD failed to provide justification for withholding the firearm and continued to withhold it until November 2009.

64. The withholding of the firearm by the BPD was unlawful and contrary to BPD rules, practices and procedures.

**2009 SUSPENSION**

65. In 2008, more than 2 years after the IAD investigation, Captain Kenneth Fong, who held the position of Superintendent at the time, brought a formal complaint against Plaintiff.

66. Fong's complaint included an allegation that Plaintiff was untruthful when he provided false information regarding the discharge of his firearm during the IAD interview on January 18, 2006.

67. Fong did not allege that Plaintiff had been untruthful on the night of the incident as had

7

been originally alleged in Complaint Control Form 1920, Complaint #5953.

68. The reason Fong did not allege that Plaintiff had been untruthful on the night of the incident is because evidence had surfaced that refuted this accusation, so Fong had constructed a new accusation.

69. Superintendent Fong's complaint was prompted by an improper motive, including a motive to retaliate against Plaintiff for having complained about the BPD's withholding of his firearm and its violation of his rights with regard to same.

70. A departmental disciplinary hearing was held in front of Deputy Supt. Kelley McCormick on March 9, 2009 for the purpose of addressing Superintendent Fong's complaint.

71. Attorney Taub represented the BPD at the March 9, 2009 disciplinary hearing.

72. Taub argued that Plaintiff must not have informed Supt. Johnson that Lee was the shooter because if Plaintiff had told him, Johnson would have interviewed Lee.

73. Taub's statement is untrue because Lee was an eye witness to the shooting and should have been interviewed by Supt. Johnson per BPD rules, practices and procedures.

74. Taub also argued that Plaintiff must not have informed Supt. Johnson that Lee was the shooter because if he had, Johnson would have noted it in his report.

75. Taub's statement is untrue because Supt. Johnson admitted during the disciplinary hearing that he may have received that information from Plaintiff that Lee was the shooter even though it was not in his report.

76. On June 25, 2009 Plaintiff was sent a Notice of Suspension by the BPD saying that he was being suspended for 45 days without pay based on Superintendent Fong's complaint including his allegation that Plaintiff violated Rule 102, § 23 (truthfulness) by providing false information during the IAD interview with Sgt. Chinetti on January 18, 2006.

77. The Notice of Suspension did not provide factual detail nor did it explain how the information Plaintiff gave to Chinetti was false.

78. The Notice of Suspension did not accuse Plaintiff of lying on the night of the incident as had been originally alleged in Complaint Control Form 1920, Complaint #5953.

79. As described herein, one purpose of the 2006 IAD interview of Plaintiff was to evaluate possible disciplinary action against Plaintiff for his actions on October 19, 2005, and now Fong's 2008 complaint focused on Plaintiff's actions during the IAD interview.

80. It was a violation of Plaintiff's rights for Fong and the BPD to have initiated disciplinary

8

action against him based on his statements during the disciplinary interview, especially since this was being done only because evidence had surfaced refuting the initial untruthfulness accusation.

81. Plaintiff served the suspension without pay, causing him to lose 45 days / nine weeks of pay totaling approximately $25,000.00 and had the determination of untruthfulness placed in his personnel record.

## IDENTITY OF SHOOTER WAS ALREADY KNOWN TO BPD

82. On the night of October 19, 2005, BPD investigating officers were aware that the shooter was Officer Lee while at Faulkner Hospital; they did not conduct a search for a suspect, nor did they interview Lee after the union representative arrived even though Lee remained present at Faulkner Hospital through the time investigating officers were there.

83. Had the BPD not known that Officer Lee was the shooter, it would have followed a different protocol on October 19, 2005 in an effort to conduct a search for the shooter.

84. Plaintiff's conduct did not impair the efficient and orderly operation of the Department.

85. Fong had no legitimate or good faith reason to pursue a complaint against Plaintiff; Plaintiff had provided enough information for the BPD to ascertain the name of the shooter while at Faulkner Hospital and was fully cooperating with their investigation.

86. Fong's complaint against Plaintiff was baseless and his motives were improper.

## 2012 - 2013 ARBITRATION

87. Plaintiff appealed the suspension decision and it was assigned to Arbitrator Michael C. Ryan, Esq.

88. On November 19, 2012 (the day before arbitration proceedings began), the basis for the BPD's untruthfulness accusation remained unclear.

89. The union attorney inquired with Attorney Taub about the basis for the untruthfulness accusation that was the subject of the arbitration, to which Taub responded by saying that Plaintiff was untruthful in the statements he made to supervisors on the night of the October 19, 2005 incident; she did not reference any accusation that Plaintiff was untruthful during the IAD interview.

90. After the arbitration hearings in 2012 and 2013, Arbitrator Ryan upheld the suspension.

91. Arbitrator Ryan issued a Decision and Award dated May 24, 2013 in which he decided that there had been just cause for Plaintiff's 2009 suspension for violating Rule 102, § 23

(truthfulness) because Plaintiff lied <u>during the January 18, 2006 IAD interview</u> when he told Sergeant Chinetti that he had provided Superintendent Johnson and Lieutenant Cullity with the identity of the shooter in the October 19, 2005 incident.

92. Sgt. Chinetti never interviewed Superintendent Johnson in connection with the IAD investigation.

93. Supt. Johnson did not testify at the arbitration.

94. Sgt. Chinetti never interviewed Lieutenant Cullity in connection with his IAD investigation.

95. An audio recording of Lieutenant Cullity's conversation with Sgt. Michael Fish from Operations shows Lieutenant Cullity provided false testimony at the arbitration.

96. This audio recording was unknown to Plaintiff at the time of the arbitration and was intentionally withheld from evidence by Attorney Taub.

97. Attorney Taub was required to provide Plaintiff and/or his union attorney with a copy of the audio recording as per the BPD rules, practices and procedures, and other applicable rules and laws.

98. As a result of Arbitrator Ryan's decision and ruling against him, Plaintiff's unpaid suspension was affirmed and he had the permanent "untruthfulness" determination placed in his personnel record.

## 2013 COMPLAINT TO COMMISIONER DAVIS AND SUBSEQUENT RETALIATION

99. In a complaint letter dated October 7, 2013 sent to Commissioner Edward Davis, and subsequently to several command staff members, Plaintiff identified the misrepresentations made by Attorney Taub during the arbitration proceeding and the mishandling of the IAD investigation into the October 19, 2005 incident, and Plaintiff asked the BPD to reject the arbitration decision, remove the untruthfulness determination from his file, and compensate him for the three months of wages that he lost because of the unjustified suspension.

100. Plaintiff's submission of this October 7, 2013 letter resulted in the BPD taking retaliatory action against Plaintiff including but not limited to, removing him from his active duty status, issuing an immediate unlawful suspension of his License to Carry, deeming him to be an unsuitable person to carry a firearm, and unlawfully seizing his personal weapons from his residence.

101. Plaintiff was returned to active duty status and his License to Carry was returned to him four days later during a meeting with then Chief Daniel Linskey who acknowledged that he and Commissioner Ed Davis had ordered the above described action because of the letter.

102. During the meeting, Plaintiff's attorney Alan Shapiro communicated to Chief Linskey that he was aware of a pattern of dishonest conduct by Attorney Taub and that she had been untruthful in other BPD matters in addition to this one.

103. After hearing this, Chief Linskey then offered to reduce Plaintiff's original suspension in exchange for a plea to a lesser offense, but his offer was rejected by the Plaintiff.

## 2014 COMPLAINT TO THE IAD AND SUBSEQUENT RETALIATION

104. Fearing further retaliation, Plaintiff submitted another complaint letter to the BPD; this time it was to Internal Affairs Division Investigator Sergeant Detective John Puglia, who was part of the newly appointed administration of Commissioner William Evans.

105. Plaintiff's complaint letter, dated May 19, 2014 and entitled "Untruthful Statements Made by Presenting Lawyers During Arbitration," referenced false statements made by Attorney Taub to the Arbitrator which violated the BPD's own Public Integrity and Truthfulness Policies.

106. After Plaintiff submitted this letter, the BPD retaliated and took negative personnel action against him.

107. Plaintiff tried to pursue his complaint through the Internal Affairs Division in accordance with BPD rules and procedures.

108. When the Internal Affairs Division would not follow BPD rules and procedures in responding to his complaint, and Plaintiff questioned their actions in this regard, he was ordered by Internal Affairs Supervisor Lieutenant Detective Christopher Hamilton not to contact the Internal Affairs Division.

109. Recognizing the severity of such an order, Plaintiff sought assistance from the BPD Anti-Corruption Division, where he met with Lieutenant Detective Brian McEachern and Sergeant Detective Courtney Matthews.

110. Although Lt. Det. McEachern promised Plaintiff that he would receive a response to his complaint, the matter was left lingering and Plaintiff received no response whatsoever.

111. Efforts were made by union attorney Ken Anderson to pursue the complaint against Staff Attorney Nicole Taub, but there was still no response.

112. BPD continued to pressure Plaintiff to abandon his complaint.

113. Plaintiff had a second meeting with the Internal Affairs Division on February 15, 2016, when he met with Internal Affairs Investigators Lieutenant Detective Fred Williams and Lieutenant Detective Adrian Troy. The meeting was hostile and isolating and Plaintiff was treated as the target of the inquiry and told he could only meet with the

11

IAD if represented by counsel, and still no complaint was ever filed.

114. Plaintiff suffered more retaliation when he was denied a promotion to Detective by Commissioner William Evans, as a result of the untruthful determination.

115. Commissioner Evans also retaliated against Plaintiff by advising him (through his then Commander Captain Haseeb Hosein) that he needed to undergo a psychological evaluation in order to be considered for the role. There was no justification for said evaluation as the Plaintiff was already deemed fit for active duty and other similarly situated candidates were not advised to undergo such an unjustified testing for consideration to be promoted to Detective.

116. The BPD intentionally requested the psychological evaluation in order to create a question about Plaintiff's mental fitness without justification as a way of making it more difficult for him to achieve the promotion he desired and deterring him from further pursuing his complaints regarding Attorney Taub's actions.

117. To date, neither the BPD Internal Affairs Division nor the nor the Anti-Corruption Division have investigated Plaintiff's complaint against Attorney Taub or the treatment the Plaintiff has received in bringing a complaint against her as a fellow BPD employee.

118. The BPD did not assign a Complaint Control Number to Plaintiff's May 19, 2014 complaint against Attorney Taub.

119. The BPD is required by its own rules, policies and procedures to assign a Complaint Control Number and investigate ALL complaints that it receives regarding conduct by Department personnel.

120. The BPD rejected Plaintiff's request for information regarding his complaint and the status of any investigation, advising the Plaintiff that the matter was turned over to the legal department (headed by Amy Ambrick, Esq.) where Attorney Taub worked at the time.

121. The BPD violated its own Rules and Procedures including but not limited to Rule 109 when it failed to investigate Plaintiff's complaint about Attorney Taub and her dishonest acts.

## INTERNAL AFFAIRS REPORT DISCOVERED

122. As the investigator of the October 19, 2005 off-duty shooting, Sergeant Chinetti had prepared a report dated February 6, 2006 which included his findings from the January 18, 2006 IAD interview of Plaintiff.  A redacted version of his report is attached as Exhibit A.

123. Attorney Taub was in possession of the IAD report at the time of the March 2009

departmental disciplinary hearing and the 2012/2013 arbitration.

124. The redacted IAD report shows conclusively that Taub lied to Arbitrator Ryan, causing him to rule against Plaintiff.

125. The redacted IAD report shows Plaintiff could not have been untruthful in the way the Arbitrator found him to be; it directly refutes the factual finding upon which the Arbitrator's Decision and Award is based.

126. The redacted IAD report shows Plaintiff told Sergeant Chinetti during the interview that union representatives had instructed him to invoke his Miranda rights and not to provide the shooter's name, which is why he did not provide it.  See Exhibit A, pp. 2-3.

127. The redacted IAD report shows that Plaintiff told Sergeant Chinetti he did NOT inform Superintendent Johnson or Lieutenant Cullity that Officer Lee was the one who discharged the firearm on October 19, 2005.

128. The redacted IAD report shows that Plaintiff did not attempt to make Sergeant Chinetti believe that he had informed Superintendent Johnson or Lieutenant Cullity that Officer Lee was the shooter.

129. The redacted IAD report refutes the critical findings in Arbitrator Ryan's May 24, 2013 Arbitration Decision and Award and shows it must be disregarded.

130. Plaintiff became aware of the existence of the IAD report in late 2017 when he was given the redacted copy in connection with a federal criminal trial in which he testified for the prosecution.

131. The redacted IAD report was contained in Plaintiff's personnel record provided by the BPD to the prosecutor in response to a request for said record from the Defendant's attorney in that proceeding, a request prompted by the prosecution's disclosure of the untruthfulness determination pursuant to *Brady v. Maryland* and *Giglio v. U.S.*

132. If the IAD Report had been provided to the Arbitrator (as required by law and under the BPD's Rules and Procedures), the Arbitrator would have reached the opposite conclusion and ruled in Plaintiff's favor.

133. Plaintiff would have appealed the May 24, 2013 Arbitrator's Decision and Award if he had been aware of the content of Sgt. Chinetti's IAD Report.

**PLAINTIFF'S 2018 REQUEST FOR REMOVAL OF UNTRUTHFULNESS DETERMINATION AND NOTICE OF FRAUD ON THE ARBITRATOR**

134. Plaintiff sent a letter to the BPD on March 22, 2018 requesting removal of the untruthfulness determination from his file based on the IAD Report he had recently acquired and the exculpatory information it contained.

13

135. On April 3, 2018 the BPD acknowledged receipt of Plaintiff's March 22, 2018 letter but there has been no substantive response or action taken.

136. Plaintiff's March 22, 2018 letter explained to the BPD how the Arbitration Decision and Award was based on false accusations by Superintendent Fong and Attorney Taub that directly contradict the IAD Report that was improperly withheld from evidence.

137. As Plaintiff described in the letter, Attorney Taub intentionally misrepresented the content of the IAD Report to Arbitrator Ryan.

138. Attorney Taub testified in the arbitration that Sergeant Chinetti found that Plaintiff was not truthful during the IAD interview because Plaintiff falsely told him that he had advised Superintendent Johnson and Lieutenant Cullity that Officer Lee was the shooter.

139. Taub's statement is reflected on page 7 of her post-hearing brief.

140. Attorney Taub's statement to the arbitrator is clearly false because the IAD Report directly refutes it: the Report specifically says Plaintiff told Sergeant Chinetti he had not provided the name of the shooter to Superintendent Johnson or Lieutenant Cullity.

141. Attorney Taub's statements constitute factual testimony not legal argument.

142. If Arbitrator Ryan had been given a copy of the IAD Report, he would have recognized that Attorney Taub was lying.

143. Arbitrator Ryan specifically relied on Attorney Taub's characterization of Sergeant Chinetti's findings in reaching his decision, which is reflected in his Arbitration Decision and Award including page 31 of same.

144. Attorney Taub made other statements of fact about Plaintiff to the Arbitrator that were false and directly contradicted by the BPD's own internal documentation.

145. Attorney Taub accused Plaintiff of failing to provide Lieutenant Cullity with the location of the shooting, but BPD internal records show that Plaintiff did provide this information to Lieutenant Cullity, enabling units to respond to the incident scene.

146. Attorney Taub's intentional misrepresentation of the facts to the arbitrator influenced the arbitrator by making him think Plaintiff was untruthful.

147. In connection with the arbitration, Attorney Taub withheld audiotapes evidencing Plaintiff's truthfulness.

14

148. Attorney Taub failed to follow BPD protocol with regard to producing audiotapes related to the reporting of the October 19, 2005 shooting incident.

149. The BPD's audiotapes would have contained the time of reporting of the October 19, 2005 incident and the time of dispatch.

150. These tapes would have supported Plaintiff's truthfulness and consistent rendition of the events.

151. In connection with the arbitration, Attorney Taub withheld certain CAD sheets evidencing Plaintiff's truthfulness.

152. The CAD sheets would have established that two police units had already responded to the shooting scene based on Plaintiff's reporting of the incident.

153. Attorney Taub recklessly disregarded her duty under the BPD public integrity policy and falsified evidence, as she distorted material evidence and knowingly failed to bring forth evidence that a reasonable person in her position would conclude might have an impact on the outcome of a matter and which prudence and justice dictates should be brought to the attention of a magistrate, officer of the court or hearing officer.

154. The BPD was notified of Attorney Taub's conduct in Plaintiff's March 22, 2018 letter but has failed to respond, or remove the untruthfulness determination from Plaintiff's personnel file, or otherwise remedy the situation.

155. Attorneys Lenny Kesten and Judy Levenson claimed to have been retained by BPD to investigate the matters raised in the March 22, 2018 letter but no genuine investigation occurred and they simply rubber stamped the arbitrator's decision.

156. On January 2, 2019, Attorney Levenson represented that she and Attorney Kesten were providing Commissioner Gross's Office with a report of their findings on or about January 7, 2019, but Plaintiff was never advised by the BPD of any such findings.

157. In the months following submission of the March 22, 2018 letter alleging improper conduct by Attorney Taub, she separated from employment with the BPD.

158. Upon information and belief, Attorney Taub's unlawful conduct as described herein was a factor leading to her separation.

**BPD CONTINUES TO WITHHOLD THE REPORT**

159. Plaintiff made multiple requests to the BPD and the City of Boston for an unredacted copy of the IAD Report but it was not produced.

160. On September 24, 2018, Plaintiff submitted a public record request to the BPD, requesting the complete IAD file for IAD Case Number 240-05, including a complete

and unredacted copy of the February 6, 2006 IAD investigation report.

161. The BPD responded by providing various documents from the IAD file but not the February 6, 2006 report, claiming that it did not have a duty to produce it.

162. On September 26, 2018 Plaintiff submitted a request for a copy of his personnel record, including a copy of the February 6, 2006 IAD investigation report, since the investigator's findings were used as a basis for pursuing negative personnel action against him.

163. The BPD responded by providing various personnel records but not the IAD report.

164. Plaintiff challenged the denial of access to the report by submitting an appeal to the Secretary of the Commonwealth, Public Records Division on December 23, 2018, citing various legal bases supporting the Department's obligation to produce the report.

165. On January 19, 2019, Rebecca Murray, Supervisor of Records for the Commonwealth of Massachusetts Public Records Division, issued an Order requiring the BPD to produce the February 6, 2006 IAD Report to Plaintiff's attorney within ten days, and finding that the BPD had failed to meet its burden to explain how an exemption applied to the record. See SPR 18/2094 sent to Shawn A. Williams, Esq., Director of Public Records for the City of Boston, attached hereto as Exhibit B.

166. Attorney Williams is the former Supervisor of Records for the Secretary of the Commonwealth Public Records Division and therefore is well aware of the requirements for responding to public record requests.

167. Attorney Williams, the BPD, and the City of Boston have failed to comply with the January 9, 2019 Order from the Supervisor of Records and have knowingly disregarded their obligations under the law.

168. Plaintiff submitted yet another request to the BPD and the City of Boston through Attorney Williams, reminding him that Defendant was continuing to be in violation of the January 9, 2019 Order and reiterating the request for production of the document, but it has still not been produced. \

169. The actions by the BPD and its personnel in initiating and prosecuting a frivolous complaint against Plaintiff, including but not limited to actions by Superintendent Fong and Attorney Taub, and actions by other Department personnel to cover up, condone, and fail to rectify their conduct, and retaliate against Plaintiff, have hurt Plaintiff's reputation and interfered with his ability to be an effective police officer and detective.

170. Removing the untruthfulness determination from Plaintiff's file is required under BPD rules and procedures because it is inconsistent with Sergeant Chinetti's IAD Report.

## REPUTATIONAL HARM AND LOST PROMOTIONAL OPPORTUNITIES

171. Plaintiff has been hyper-scrutinized by BPD personnel because they perceive him as dishonest based on the untruthfulness determination that was reached.

172. Plaintiff's professional and personal reputation in the community has been irreparably damaged as a result of this untruthfulness determination.

173. Having the untruthfulness determination in Plaintiff's record has and will continue to permanently impact his opportunities for promotion within the BPD and employment opportunities with other agencies for the remainder of his career in law enforcement.

174. Credibility and truthfulness are essential functions of Plaintiff's job as a police officer, especially when testifying as a witness for the prosecution in criminal court proceedings.

175. Having the untruthfulness determination in his file means Plaintiff is permanently labeled as someone who cannot be trusted to tell the truth.

176. Having the untruthfulness determination in his file means that whenever Plaintiff is called upon to testify for the prosecution in a federal criminal trial, the untruthfulness determination has to be provided by the prosecutor to the Defendant's attorney in connection with a *Brady/Giglio* request, meaning that Plaintiff's credibility is impaired, thus impairing the prosecutor's ability to secure a conviction.

177. The BPD knows that this untruthfulness determination is based on false testimony and withholding of evidence by Attorney Nicole Taub, so it must not allow this determination to be introduced in any such criminal proceeding.

178. Failure to remove the untruthfulness determination will cause further irreparable harm to the criminal justice system and the victims it is designed to protect.

179. On multiple occasions since serving his suspension in 2009, Plaintiff has taken the BPD promotional exam seeking promotion to sergeant but has not been successful in receiving this promotion.

180. Prior to his suspension in 2009, Plaintiff was enrolled in college courses and in the process of pursuing his bachelor's degree, with a goal of completing this and subsequently completing his master's, so that he could increase his compensation and advance into a supervisory role within the BPD.

181. At or around the time of his suspension in 2009, Plaintiff was forced to withdraw from his courses and bachelor's degree program because he was unable to perform the necessary coursework due to the treatment he was facing at work.

17

182. Plaintiff's inability to complete his bachelor's degree and failure to achieve a promotion to sergeant are directly attributable to Defendant's unlawful conduct and Plaintiff's anxiety and emotional distress caused by this conduct.

183. Had Plaintiff completed his bachelor's degree and/or achieved the promotion to sergeant, he would have been receiving far greater compensation than he has been receiving as a patrol officer, and he would have had more advancement opportunities available to him within the BPD including promotion to lieutenant and captain.

184. Plaintiff has been and continues to be deprived of compensation, educational opportunities, and career advancement opportunities, as a direct and proximate result of Defendants' actions described herein.

185. Defendants' actions have caused and are continuing to cause Plaintiff to suffer monetary losses, harm to his reputation, harm to his ability to perform his job as a police officer and his ability to participate in basic life activities, and harm to his emotional and physical health.

## DECEMBER 18, 2018 NOTICE AND REQUEST TO BPD

186. The BPD has been notified multiple times by Plaintiff of the ethical and legal reasons it must remove the untruthfulness determination from his file, but the BPD has failed to take the necessary action.

187. On December 18, 2018, Plaintiff submitted a letter to the BPD reiterating his request for removal of the untruthfulness determination from his file, noting the urgency of his request given that he had been called upon to testify for the prosecution in an upcoming federal criminal proceeding.

188. Curiously, the proceeding never went forward as a plea bargain was reached wherein the Defendant pleaded guilty to a far less serious charge.

189. The plea bargain alleviated the need for Plaintiff to testify and thus alleviated the need for the untruthfulness issue to be addressed for purposes of that court proceeding.

190. Failure to remove the untruthfulness determination means Plaintiff will continue to be considered a "*Giglio* impaired witness" in federal criminal proceedings in which he testifies.

191. By failing to remove the untruthfulness determination, the BPD is condoning dishonest and corrupt conduct by its agents and knowingly impairing Plaintiff's ability to serve as a credible witness for the prosecution and knowingly impeding the prosecution of criminals.

192. Plaintiff has incurred significant attorney's fees attempting to have the untruthfulness determination removed and his reputation restored within the Department and in the community, and the BPD's failure to take action as required by law and its own internal policies demonstrates an ongoing tolerance of corrupt activity and unlawful conduct by Department personnel at all levels.

## CURRENT ASSIGNMENT

193. On August 5, 2019 Plaintiff learned he is now assigned to work under Lieutenant Detective Fred Williams.

194. This assignment is problematic and creates a hostile work environment for Plaintiff because of Lt. Det. Williams' participation in negative actions against Plaintiff in the past.

195. Lt. Det. Williams was the superior officer from the Internal Affairs Division who met with the Plaintiff regarding his complaints about Attorney Taub, and was a recipient of Plaintiff's May 19, 2014 Complaint, which he refused to accept or investigate.

196. Lieutenant Detective Williams refused to speak with Plaintiff and hung up the phone on him when he called to inquire about the status of his Complaint.

197. Working under Lt. Det. Williams' supervision is causing Plaintiff to experience a high level of anxiety and is a constant reminder of the continuing retaliatory treatment he endures and the baseless untruthfulness determination that remains in his file.

## CLAIMS FOR RELIEF

## COUNT I:
## 42 U.S.C. § 1983 - VIOLATION OF CIVIL RIGHTS
(As to all Defendants)

198. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

199. Defendants are "persons" under 42 U.S.C. §1983 who have acted "under the color of state of law" by using power they possess by virtue of state law and deprived Plaintiff of rights secured by the U.S. Constitution and federal statutes.

200. Defendants' violations of 42 U.S.C. §1983 include but are not limited to: failing to provide Plaintiff with notice the basis for the accusation of untruthfulness against him, and changing the basis for the accusation without notice; interfering with Plaintiff's rights to be free from being labelled as a Giglio-impaired witness, and interfering with the prosecution's ability to prosecute federal criminal cases where Plaintiff is a government witness, negatively impacting victims' rights; refusing to process or investigate Plaintiff's complaints to the BPD about Taub's untruthful statements during

19

the arbitration and related issues; retaliating against Plaintiff for engaging in protected speech involving a matter of public concern and speaking out and exercising his rights to free speech and due process of law and rights against self-incrimination and incrimination of a fellow union member; questioning Plaintiff's mental fitness and requiring him to undergo an unjustified psychological evaluation as a retaliatory measure; depriving Plaintiff of his property rights and right to possess his own personal firearm and his right against unreasonable search and seizure; pursuing a groundless complaint against Plaintiff in February 2008 as a retaliatory measure in response to written demands from Plaintiff for the return of his personal firearm that had been unlawfully withheld; depriving Plaintiff of the IAD investigation report that would have exonerated him with regard to allegations against him for untruthfulness.

201. In committing these violations of Constitutional and statutory rights, Defendants Gross, Evans, Davis, Taub, Fong and Williams were acting in their respective official capacities as agents of the BPD and the City of Boston, and their actions were carried out pursuant to an official policy and custom of the BPD and/or the City of Boston.

202. It is an official policy and custom of the BPD and the City of Boston to retaliate against employees like Plaintiff who complain about unlawful and dishonest actions by high-ranking BPD personnel, and to try and cover up said actions rather than correct them.

203. Defendants' actions pursuant to this official policy and custom have caused and will continue to cause Plaintiff to suffer monetary losses, harm to his professional and personal reputation, harm to his ability to perform his job as a police officer and his ability to participate in basic life activities, and harm to his emotional and physical health.

204. Accordingly, Plaintiff is entitled to recover damages from Defendants as a result of their immediately above-described unlawful conduct.

205. Plaintiff is entitled to recovery of his attorneys fees and costs from Defendants pursuant to applicable law including but not limited to the Civil Rights Attorneys Fee Awards Act of 1976, 42 U.S.C. §1988 [b].

206. Plaintiff is entitled to recovery of punitive damages from Defendants under applicable law including but not limited to Smith v. Wade, 461 U.S. 30 (1983) and related case law, because Defendants' conduct was reckless and/or callously indifferent to the federally protected rights of others and/or Defendants were motivated by evil intent.

## COUNT II:
## 42 U.S.C. § 1983 – AS REMEDY FOR VIOLATIONS OF 42 U.S.C. § 1981
(As to all Defendants)

207. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

208. Under 42 U.S.C. § 1981(a), all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

209. Plaintiff is a person of color and a "person" within the meaning of 42 U.S.C. §1981(a).

210. Under 42 U.S.C. § 1981(b), "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

211. As described herein, Defendants have acted to impair and violate Plaintiff's rights and protections that are guaranteed to him under 42 U.S.C. §1981.

212. The impairment and violation of Plaintiff's rights in this regard resulted from a custom and/or policy maintained by Defendants within the meaning of 42 U.S.C. §1981 and as described in detail herein.

213. Said custom and/or policy has caused Plaintiff to be treated less favorably than white employees (including but not limited to Attorney Taub) with respect to various benefits, privileges, terms and conditions of employment, including but not limited to the disciplinary process, the handling of complaints against Department personnel, application of personnel policies and BPD Rules, the BPD public integrity policy, rules governing exculpatory evidence and falsification of evidence, and other aspects of the employment relationship with BPD.

214. The BPD and its agents named herein refused to accept or investigate Plaintiff's complaint about Attorney Taub's dishonest conduct and violation of the public integrity policy, and refused to assign it a Complaint Control Number as required under Department rules and policies, and as is the normal practice with all complaints against Department personnel.

215. The BPD and its agents named herein unfairly disciplined Plaintiff as a result of Taub's dishonest and fraudulent conduct and have taken no action to remedy the resulting harm suffered by Plaintiff upon learning Taub's conduct was dishonest and fraudulent.

216. Defendants' actions constitute intentional discrimination on the basis of race.

217. In committing the acts described herein, Defendants have acted under color of state law within the meaning of 42 U.S.C. §1981(c).

218. 42 U.S.C. §1981 is substantive and not remedial, and 42 U.S.C. §1983 provides the remedy for a plaintiff to pursue claims for damages against state governmental units for violation of rights guaranteed by § 1981.

219. Defendants' actions have caused and will continue to cause Plaintiff to suffer monetary loss including but not limited to lost earnings, attorneys fees, and other out-of-pocket expenses, as well as harm to his professional and personal reputation and opportunities for advancement, harm to his ability to perform his job as a police officer and his ability to participate in basic life activities, and have caused Plaintiff to experience emotional distress and harm to his mental and physical health.

220. Accordingly, Plaintiff is entitled to recover damages from Defendants under 42 U.S.C. §1983 as a result of their violations of 42 U.S.C. §1981 described herein.

221. Plaintiff is entitled to recover attorneys fees and costs from Defendants under applicable law.

222. Plaintiff is entitled to recovery of punitive damages from Defendants as Defendants' conduct was reckless and/or callously indifferent to the federally protected rights of others and/or Defendants were motivated by evil intent.

## COUNT III
## CONSPIRACY TO VIOLATE CIVIL RIGHTS - 42 U.S.C. § 1985
### (As to all Defendants)

223. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

224. Defendants are "persons" under 42 U.S.C. § 1985 who acted "under the color of state law" and were party to an agreement between two or more state actors who acted in concert and deprived Plaintiff of his constitutional rights and federal statutory rights as described herein.

225. Defendants were acting in concert to commit one or more said unlawful acts and/or to commit one or more said lawful acts by unlawful means.

226. The actions of Defendants resulted in damages to Plaintiff as described herein.

227. These damages are a direct, proximate and foreseeable result of Defendants' conspiracy.

228. Plaintiff is entitled to recover damages from Defendants as a result of their above-described unlawful conduct, and is entitled to recover attorneys fees and costs from Defendants under applicable law.

229. Plaintiff is entitled to recovery of punitive damages from Defendants as Defendants' conduct was reckless and/or callously indifferent to the federally protected rights of others and/or Defendants were motivated by evil intent.

<u>COUNT IV</u>
<u>UNFAIR LABOR PRACTICES – G.L. 150E, § 10</u>
(As to Boston Police Department and City of Boston)

230. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

231. Plaintiff is an "employee" within the meaning of the Massachusetts collective bargaining law, G.L. c. 150E, § 10(a).

232. Defendant BPD is a "public employer" within the meaning of G.L. c. 150E, § 10(a).

233. Defendant City of Boston is a "public employer" within the meaning of G.L. c. 150E, § 10(a).

234. Defendant Taub is a "designated representative" within the meaning of G.L. c. 150E, § 10(a).

235. Defendant Fong is a "designated representative" within the meaning of G.L. c. 150E, § 10(a).

236. As described herein, Plaintiff received assistance and instruction from his union representatives in connection with the questioning and investigatory interviews on October 19, 2005 at Faulkner Hospital, including an instruction to refrain from telling investigatory officers that it was Lee who shot Mencey.

237. During the January 18, 2006 IAD investigation interview, Plaintiff told Sergeant Chinetti how he had received this instruction.

238. As described herein, Defendant BPD and the City of Boston retaliated against Plaintiff for exercising these rights he had as a union member.

239. Sergeant Chinetti's February 6, 2006 report reflects the foregoing information.

240. In 2008, more than two years after the October 19, 2005 shooting incident, Defendant Fong initiated a complaint against Plaintiff and falsely accused him of lying during the IAD interview, claiming that he told Sergeant Chinetti that he had informed the investigating officers that Officer Lee shot Officer Mencey.

241. Defendant Fong had a retaliatory motive and lacked a legitimate basis for the complaint.

242. Defendants have never provided Plaintiff with a copy of Sergeant Chinetti's IAD report.

243. Sergeant Chinetti's report contains exculpatory evidence showing that Plaintiff did not

23

make the statement Fong accuses him of making.

244. Defendants have engaged in prohibited practices under G.L. c. 150E, § 10 as described above.

245. Defendants pursued disciplinary action against Plaintiff in connection with a situation where he was exercising his rights as a union member and following instructions from his union representative where, upon information and belief, the union representative was seeking to protect the rights of all union members involved.

246. Additionally, Defendants' conduct constitutes a prohibited practice under Massachusetts law including G.L. c. 150E, § 10 because, under the circumstances, Plaintiff's statements during the IAD interview cannot be used against him as a basis for discipline.

247. Plaintiff has suffered and is continuing to suffer economic and non-economic damages as a direct, proximate and foreseeable result of Defendants' conduct, and has the right to recover these damages from Defendants, including attorneys fees, costs and punitive damages.

## COUNT V
## WHISTLEBLOWER LAW - G.L. c. 149, §185
(Against Boston Police Department and City of Boston)

248. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

249. Plaintiff is an "employee" as defined in G.L. c. 149, §185(1).

250. Defendant BPD is an "employer" as defined in G.L. c. 149, §185(2).

251. Defendant City of Boston is an "employer" as defined in G.L. c. 149, §185(2).

252. Defendants BPD and City of Boston have taken retaliatory action against Plaintiff as described herein, in response to Plaintiff objecting to and complaining about unlawful and unethical conduct by Defendants including but not limited to conduct by Defendant Taub which Plaintiff believed posed a risk to the public's well-being.

253. Plaintiff has suffered economic and non-economic harm as a result of Defendants' violation of this law.

254. Plaintiff lacks an adequate remedy at law and is entitled to equitable relief including but not limited to a temporary restraining order and/or injunction, restraining the Defendants from continuing to violate this law, as provided in G.L. c. 149, §185(d).

255. Plaintiff is entitled to immediate removal of the untruthfulness determination from his

file, compensation for three times the amount of lost wages resulting from the retaliatory suspension, delayed promotion and other lost compensation plus interest thereon, reasonably anticipated future lost earnings, plus attorney's fees and costs, including but not limited to the attorneys' fees and costs incurred in notifying Defendants of the unlawful and unethical practice and affording Defendants multiple opportunities to correct the activity as a way of avoiding this lawsuit.

## COUNTY VI
## VIOLATION OF PERSONNEL RECORD LAW –
### G.L. c. 149, §52C
(As to Boston Police Department and City of Boston)

256. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

257. Defendants BPD and City of Boston have violated the Massachusetts Personnel Record Law by failing to provide Plaintiff with a copy of the February 6, 2006 IAD investigation report prepared by William Chinetti in IAD case no. 204-05.

258. Plaintiff was entitled to receive the IAD report no later than February 2008 when Superintendent Fong filed a Complaint against Plaintiff alleging that he was untruthful during the IAD interview.

259. The findings and conclusions of Sergeant Chinetti contained in the February 6, 2006 IAD report directly relate to Fong's Complaint and the disciplinary action that was subsequently taken by Defendants against Plaintiff as a result of this Complaint.

260. The February 6, 2006 report actually refutes Superintendent's Fong's February 20, 2008 complaint against Plaintiff.

261. The February 6, 2006 report also refutes Taub's statements to the Arbitrator about what Plaintiff told Sergeant Chinetti during the interview.

262. Defendants BPD and City of Boston have continued to unlawfully withhold the unredacted February 6, 2006 report as an ongoing violation of the Massachusetts Personnel Record Law.

263. To date Defendants have failed to produce the unredacted report to Plaintiff despite multiple requests.

264. The untruthfulness determination remains in Plaintiff's personnel record, yet the Defendants continue to withhold the report upon which this false accusation is based.

265. Defendants BPD and the City of Boston have violated the Massachusetts Personnel Record Law by refusing to remove the untruthfulness determination from Plaintiff's record.

266. Plaintiff is also entitled to recover penalties against Defendants for knowing disregard of its obligation and misrepresenting to the Supervisor of Records for the Massachusetts Secretary of State's Office that Plaintiff had a unique right of access to this document as a way of trying to avoid production of the document under the Massachusetts Public Records law G.L. c. 66, §10.

267. Plaintiff submitted a request to the BPD for expungement pursuant to G.L. c. 149, §52C on March 22, 2018, seeking removal of the untruthfulness determination from Plaintiff's personnel file on grounds that the untruthfulness determination was based on an arbitration decision that directly conflicts with Defendants' own internal records (the IAD report), and it is based on an arbitration decision that resulted from fraudulent misrepresentations of fact by a BPD employee.

268. The March 22, 2018 request to BPD was prompted by Plaintiff's receipt of the heavily redacted version of the IAD investigation report after it was provided to him by a third party in connection with a federal criminal trial in which he was testifying as a prosecution witness.

269. The BPD acknowledged receipt of the March 22, 2018 request by way of a letter on April 3, 2018 and stated that the request was being reviewed, but to date has failed to respond substantively and failed to remove the untruthfulness determination.

270. Plaintiff submitted another request for removal of the untruthfulness determination on December 18, 2018, as prompted by concern that the presence of this untruthfulness determination in his file would impair the prosecutor's ability to secure a conviction in an upcoming federal trial, as Plaintiff would be considered a *Giglio* impaired witness.

271. Defendants did not respond to Plaintiff's December 18, 2018 request and did not remove the untruthfulness determination.

272. Defendants were obligated under the Personnel Record Law to remove the untruthfulness determination because it has an obligation to make corrections to an employee's personnel record when false information in the record comes to its attention.

273. By failing to make this correction to Plaintiff's personnel record, Defendants are allowing the continuation of a dishonest and corrupt action and condoning said conduct.

274. It is clear from the redacted version of the IAD report that the Arbitrator's finding of untruthfulness can no longer be relied upon as valid, and the personnel record must be corrected, as required under the Personnel Record Law.

275. Plaintiff has suffered and is continuing to suffer economic and non-economic harm as a result of Defendants' unlawful conduct and is entitled to an award of monetary damages.

276. Plaintiff is also entitled to equitable relief including but not limited to production of an unredacted copy of the report to Plaintiff, permanent removal of the untruthfulness determination from Plaintiff's personnel record, attorney's fees dating back to 2008 when the record should have been produced by law.

277. Plaintiff lacks an adequate remedy at law and is entitled to equitable relief and recovery of money damages from Defendants as a result of these violations.

## COUNT VII
## VIOLATION OF MASSACHUSETTS PUBLIC RECORDS LAW G.L. c. 66, § 10
(As to Boston Police Department, the City of Boston, Shawn Williams and William Gross)

278. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

279. The Massachusetts Public Records Law ("MPRL") strongly favors disclosure by creating a presumption that all government records are public records, and the burden is on the Defendant to prove by a preponderance of the evidence that an exemption applies allowing withholding of any portion of the record.

280. Plaintiff made a public record request to Defendants City of Boston and BPD on September 24, 2018.

281. Attorney Shawn Williams is the Director of Public Records and Records Access Officer for the City of Boston and its agencies including the BPD.

282. Under the MPRL, Defendants BPD, William Gross as Commissioner, the City of Boston, and Shawn Williams, are custodians of the public record Plaintiff seeks, as per the admission to this fact in a September 27, 2018 correspondence.

283. Defendants BPD, Commissioner Gross, the City of Boston, and Shawn Williams were required to provide Plaintiff with an unredacted copy of Sergeant Chinetti's February 6, 2006 IAD investigation report in response to Plaintiff's September 24, 2018 public record request.

284. These Defendants violated the MPRL by failing to provide the record within 10 days and failing to demonstrate the application of any exemption.

285. These Defendants are continuing to withhold the record without having demonstrated the application of any exemption under the MPRL, in violation of the January 9, 2019 Order from the Supervisor of Records for the Secretary of the Commonwealth.

286. Defendants have continued to ignore subsequent requests for the record from Plaintiff dated April 26, 2019 and June 21, 2019 requesting compliance with the January 9, 2019 Order and attempting to obtain the record without the need for a lawsuit.

287. Plaintiff's record requests and the January 9, 2019 Order were received by Defendant Shawn Williams, who is or should be aware of the MPRL requirements and Defendants' obligation to produce the record, as he previously served as Supervisor of Records for the Commonwealth of Massachusetts.

288. Under G.L. c.66, §64, Shawn Williams has obligations as Records Access Officer to coordinate the response from the BPD and the City of Boston and produce the requested report in a timely manner, which he failed to do here.

289. Attorney Williams' actions are part of a pattern and policy and overall practice by Defendants BPD and City of Boston of deliberately ignoring their obligations under the law for the purpose of hiding the truth and creating hurdles for the Plaintiff in seeking removal of the untruthfulness determination and clearing his name.

290. The Supervisor of Records for the Commonwealth of Massachusetts specifically found in her January 9, 2019 Order that Defendants failed to demonstrate the application of any exemption to the MPRL that would justify withholding of the February 6, 2006 IAD investigation report.

291. Defendants did not appeal the January 9, 2019 Order so it is final and binding on Defendants.

292. Plaintiff is entitled to recovery of his attorney's fees under the MPRL, including but not limited to fees related to preparation of the March 22, 2018 letter to Defendants in which said record was requested initially, and all subsequent work leading up to and including the filing of this lawsuit, as the record has still not been produced.

293. Defendants denied access to the report based on an allegation that Plaintiff had a "unique right of access" to the record; however the Supervisor of Records for the Commonwealth of Massachusetts rejected this argument, given that Plaintiff and his current and former counsel have all been denied access to the report since 2006.

294. Defendants also denied Plaintiff access to the report on grounds that it falls within exemption (f) pertaining to investigatory materials, but the Supervisor of Records for the Commonwealth of Massachusetts rejected this argument, since Defendants could not show how disclosure of the report would reveal confidential investigative techniques that are unique to the BPD or how disclosure would prejudice the possibility of effective law enforcement.

295. The Supervisor of Records recognizes that statutory exemptions are narrowly construed and are not blanket in nature.

296. Defendants' unlawful actions have caused Plaintiff to suffer economic and noneconomic harm and Plaintiff is entitled to recovery of these damages from Defendants.

297. There is a presumption in favor of awarding Plaintiff his attorney's fees and costs under the MPRL.

298. Punitive damages should be assessed against Defendants under the facts of this case, as they did not act in good faith as per G.L. c. 66, § 10A(d).

299. Plaintiff is entitled to an expedited ruling on this claim under G.L. c. 66, § 10A(d)(1).

## COUNT VIII
## DECLARATORY JUDGMENT
### (As to Boston Police Department and City of Boston)

300. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

301. There is an actual controversy between Plaintiff and Defendants regarding the production of requested records, particularly the February 6, 2006 IAD report described herein.

302. Pursuant to G.L. c. 231A and the Massachusetts Public Records Law, Plaintiff is entitled to a declaration that the record he has requested is a public record within the meaning of G.L. c. 66, § 10 and the release of this record to him (unredacted as to all information pertaining to him) is required by law and the Defendants have no right to withhold such record.

303. In the alternative, pursuant to G.L. c. 231A and the Massachusetts Personnel Record Law, Plaintiff is entitled to a declaration that the record he has requested is a personnel record within the meaning of G.L. c. 149, § 52C and that Defendants are required by law to produce a copy of same to Plaintiff since information in said record formed the basis for Defendant BPD taking disciplinary action against Plaintiff, including unpaid suspension and placing an untruthfulness determination in his personnel file permanently.

304. Plaintiff is entitled to recovery of his attorneys fees dating back to at least 2008 when Defendants were required to provide him with a copy of the record.

## COUNT IX
## REQUEST FOR EXPUNGEMENT
## G.L. c. 149, § 52C
### (As to Boston Police Department and City of Boston)

305. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

306. Under the Personnel Record Law, G.L. c. 149, § 52C, an employee has the right to correction of false information that appears in his personnel record and expungement of

29

documents in his file containing false material.

307. Under this statute, the employer is obligated to make the correction and remove the document(s) immediately upon receiving notice of the false information.

308. Plaintiff is an "employee" within the meaning of this statute.

309. Defendant BPD is an "employer" within the meaning of this statute.

310. Defendant City of Boston is an "employer" within the meaning of this statute. Defendants are in possession of a document (the February 6, 2006 IAD report) that directly refutes the untruthfulness determination in Plaintiff's personnel record.

311. Defendants are aware that the untruthfulness determination is based on false information.

312. At the time Defendants placed the February 6, 2006 report in Plaintiff's personnel record, they knew or should have known it contained false information.

313. Defendants' failure to remove the untruthfulness determination violates the Massachusetts Personnel Record Law and other Massachusetts and federal laws as described herein.

314. Defendants' failure to remove the untruthfulness determination also violates the BPD's own rules and policies as described herein, including but not limited to its public integrity policy.

315. Failure by the Defendants to remove the untruthfulness determination will also cause harm to third parties and cause interference with the federal criminal justice system, as Plaintiff will be considered a "Giglio impaired witness" based on a meritless untruthfulness determination, thus impairing the prosecutor's ability to secure convictions in said proceedings.

316. Under G.L. c. 149, § 52C, Plaintiff is entitled to issuance of an Order from this honorable Court, requiring that Defendants permanently remove the untruthfulness determination from his personnel record.

317. Plaintiff lacks an adequate remedy at law.

318. Plaintiff has suffered and will continue to suffer economic and noneconomic damages as a result of Defendants' refusal to remove the record.

319. In addition to removal of the untruthfulness determination, Plaintiff is entitled to recovery of these damages, including attorney's fees in seeking removal.

## COUNT X
### INJUNCTIVE RELIEF
(As to Boston Police Department and City of Boston)

320. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

321. As explained herein, Defendants have refused to remove the untruthfulness determination from Plaintiff's personnel record and have refused to produce an unredacted copy of the February 6, 2006 IAD investigative report despite being legally obligated to take these actions and despite being requested to do so multiple times by Plaintiff.

322. Plaintiff is continuing to suffer irreparable harm as a result of Defendants' refusal to remove the untruthfulness determination from his record.  This includes but is not limited to harm to his reputation, ability to perform his job, opportunities for advancement, psychological harm, and harm to his ability to participate in basic life activities.

323. Plaintiff lacks an adequate remedy at law.

324. In light of the foregoing and the irreparable harm to Plaintiff, it is necessary that the Court grant Plaintiff injunctive relief including ordering Defendant to remove the untruthfulness determination permanently from Plaintiff's file; ordering Defendants to provide Plaintiff with an unredacted copy of the IAD report; and ordering Defendants to circulate throughout the BPD a notice indicating Plaintiff has been cleared regarding this previous untruthfulness finding.

325. Plaintiff is entitled to recovery of his attorneys fees from Defendants for all legal services performed in seeking removal of this baseless untruthfulness determination.

## COUNT XI
### CIVIL CONVERSION
(As to Boston Police Department and City of Boston)

326. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

327. Defendant BPD has acted in violation of Massachusetts common law by engaging in civil conversion when it retained possession of Plaintiff's personal firearm without Plaintiff's permission and without a legal basis to do so.

328. Defendant's initial reason for taking possession of Plaintiff's personal firearm in connection with the October 2005 incident did not justify its continued possession for an extended period of time of approximately four years.

31

329. Defendant continued to possess the firearm without Plaintiff's permission and without legal justification despite written demand from Plaintiff and his former attorney to return the firearm.

330. Plaintiff has suffered economic and non-economic damages as a result of Defendants' unlawful conduct and is entitled to recover same from Defendants.

**COUNT XII**
**FRAUD**
(As to the Defendants)

331. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

332. As more fully described herein, Attorney Nicole Taub intended to defraud Plaintiff and intended to defraud Arbitrator Ryan into ruling against Plaintiff in connection with the 2012-2013 arbitration.

333. Attorney Taub intentionally and knowingly made material misrepresentations of fact to Arbitrator Michael Ryan and intentionally and knowingly withheld from evidence the documentation refuting her testimony and refuting the untruthfulness accusation against Plaintiff, evidence which Plaintiff discovered only after the redacted February 6, 2006 report was given to him by a third party in late 2017.

334. Attorney Taub represented to Arbitrator Ryan that Plaintiff had been untruthful during the IAD interview in that he told the IAD investigator that he had provided Superintendent Johnson and Lieutenant Cullity with the name of the shooter in the October 19, 2005 incident.

335. This was a false statement of fact because Plaintiff did NOT tell the IAD investigator that he had provided Superintendent Johnson and Lieutenant Cullity with the name of the shooter in the October 19, 2005 incident; to the contrary, Plaintiff told the IAD investigator that he had NOT informed these officers of this particular information. See IAD report, Exhibit A, Pages 2 – 3.

336. Plaintiff told the IAD investigator that his union representative had instructed him NOT to provide this detail and that the union attorney had instructed him to invoke his Miranda Rights so he complied. See Exhibit A, Pages 2 – 3.

337. Attorney Taub purposely withheld the IAD investigation report and knowingly misrepresented the content of the report and findings of the IAD investigator, knowing that her statements to the arbitrator about this were false, and intending to have the arbitrator rely upon her statement in reaching the conclusion that Plaintiff had been untruthful.

338. Attorney Taub knew that by withholding the IAD report from the arbitrator and from

Plaintiff and his attorney, the arbitrator would have no way of knowing that she was lying.

339. Given that Attorney Taub had an ethical duty to be truthful under the professional rules of conduct governing attorneys and under the BPD's public integrity policy, the arbitrator's reliance upon her statements was reasonable.

340. The arbitrator was defrauded into ruling against Plaintiff at the arbitration by Attorney Taub's false statements of fact.

341. Arbitrator Ryan found that there had been just cause for Plaintiff's 2009 suspension for violating Rule 102, §23 (truthfulness) based on the finding that Plaintiff had been untruthful during the January 18, 2006 IAD investigation interview when he told the interviewer that he had provided the investigating officers with the identity of the shooter on the night of the October 19, 2005 incident.

342. It was Attorney Taub's fraudulent misrepresentations of fact that led Arbitrator Ryan to uphold the suspension and find that Plaintiff had been untruthful; the arbitration decision, including page 31 of said decision, says the arbitrator specifically relied upon her characterization of Sergeant Chinetti's findings.

343. It was only after Plaintiff had received a redacted version of the report in late 2017 that there was conclusive proof that Attorney Taub had misrepresented Sgt. Chinetti's findings.

344. Attorney Taub's testimony about this key fact determined the outcome of the arbitration.

345. If the arbitrator had been presented with a copy of the IAD Report as opposed to false statements from Attorney Taub about what the Report stated, he would have ruled in Plaintiff's favor.

346. As described herein, Attorney Taub made other false statements of fact and mischaracterized other evidence during the arbitration, which impacted the result because it caused the arbitrator to have a negative impression of Plaintiff's overall credibility.

347. Attorney Taub cherry-picked certain portions of the IAD interview transcript and left out other critical statements as a way of making Plaintiff appear untruthful.

348. While generally speaking it is acceptable for attorneys to focus on portions of the evidence that support the legal argument they are putting forth, in this case her statement constitutes fraudulent misrepresentations because the findings of the IAD interviewer were available but that evidence was purposely withheld by Attorney Taub, enabling her to tell the Arbitrator that the interviewer had made the opposite finding.

33

349. Attorney Taub made other misrepresentations which influenced the Arbitrator to rule against Plaintiff, including falsely accusing Plaintiff of failing to provide Lieutenant Cullity with the location of the October 19, 2005 shooting incident, and claiming this caused a delay in notifying the appropriate units and a delayed response to the scene, as reflected on page 11 of her post hearing brief.

350. Attorney Taub's statements about the location are directly refuted by the BPD's own documentation including a report prepared by Sergeant Detective Michael Talbot entitled "Investigation of Firearm Discharged by Boston Police Officer Frank Lee."

351. Attorney Taub's testimony on this point is also refuted by the reports of Sergeant Colon, Sergeant Cunniffe and Lieutenant Cullity which show that Plaintiff relayed information about the location of the shooting incident to Lieutenant Cullity during the initial phone call, enabling units to respond right away.

352. Attorney Taub also misrepresented evidence by telling the arbitrator that the source of the information about the incident location was Sergeant Colon and not Plaintiff, which was directly refuted by the department's own evidence showing it was Plaintiff who provided that information to Lieutenant Cullity in the initial call.

353. These facts show Attorney Taub committed fraud on the arbitrator when stating that Plaintiff lied to the IAD about telling Lieutenant Cullity the incident location.

354. Attorney Taub also committed fraud on Plaintiff and on the arbitrator by withholding critical audio tapes that would have established Plaintiff's truthfulness.

355. Defendant BPD has required procedures that must be followed with respect to producing audio tapes related to the reporting of a shooting incident.

356. Attorney Taub failed to follow said procedures and did not produce these items that would have shown Plaintiff was truthful in his rendition of the event since they revealed information about the timing of reporting of the incident and time of dispatch.

357. The only audio recording made available by Attorney Taub in connection with the arbitration was the audio recording of the conversation between Lieutenant Cullity and Sergeant Fish; all other audio tapes were withheld from evidence including any audio tape of the conversation between Plaintiff and Lieutenant Cullity which would have supported Plaintiff's testimony that he advised Lieutenant Cullity of the incident location.

358. Attorney Taub also committed fraud on Plaintiff and on the arbitrator when she intentionally withheld CAD sheets that would have further supported Plaintiff's truthfulness.

359. The CAD sheets would have established that two police units were already responding

to the incident scene before Sergeant Colon told Lieutenant Cullity the location, and that Plaintiff was truthful and had in fact reported the location of the incident to Lieutenant Cullity enabling units to respond promptly.

360. Attorney Taub purposely withheld this evidence because she knew it would establish Plaintiff's truthfulness.

361. The BPD's Public Integrity Policy prohibits BPD personnel including Attorney Taub from withholding said exculpatory evidence.

362. But for Attorney Taub's misrepresentations of fact and intentional withholding of key evidence, Arbitrator Ryan would have ruled in Plaintiff's favor and Plaintiff would not be suffering with a baseless untruthfulness determination in his record.

363. Had Attorney Taub disclosed the evidence as she was required to do, Plaintiff would have appealed the Arbitrator's ruling.

364. As described herein, the actions of Defendants BPD, Commissioner Gross, and the City of Boston served to facilitate, enable, and cover up the fraudulent actions of Attorney Taub, and led to delay in the discovery of these actions by Plaintiff.

365. To date, Defendants have continued to engage in fraudulent acts, as described herein, by covering up and refusing to investigate Attorney Taub's fraudulent conduct.

366. Plaintiff has suffered and is continuing to suffer economic and non-economic injury as a direct, proximate and foreseeable result of Defendants' fraudulent conduct and is entitled to recover damages from Defendants.

367. Plaintiff is entitled to recover his attorneys fees from Defendants for having to go through the arbitration process, seek correction of the improper ruling, and proceed with this lawsuit, as a direct and proximate result of Attorney Taub's fraudulent actions and the BPD's failure to rectify the harm she has caused.

## COUNT XIII
## REQUEST TO VACATE ARBITRATION AWARD - G.L. c. 150C
### (As to Boston Police Department and City of Boston)

368. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

369. Under G.L. c. 150C, § 11(a)(1) the Court shall vacate an arbitration award where the award was procured by corruption, fraud or other undue means.

370. Under Massachusetts law, presenting perjured testimony to an arbitrator and withholding exculpatory evidence in order to obtain an award in one's favor constitutes fraud under G.L. c. 150C, § 11(a)(1).

371. As described herein, the Arbitration Decision and Award dated May 24, 2013, upon which Plaintiff's untruthfulness determination is based, resulted from perjured testimony and improper withholding of exculpatory evidence by Defendant Taub.

372. Taub intentionally misrepresented Sgt. Chinetti's findings from the IAD interview and then unlawfully withheld his report from Plaintiff and the Arbitrator so they could not see that it refuted the Defendants' accusations against Plaintiff.

373. Therefore the Arbitration Decision and Award resulted from corrupt and fraudulent acts and use of undue means by Taub as an agent of Defendants BPD and the City of Boston.

374. As described herein, Defendants BPD and City of the Boston have failed to take corrective action with regard to Taub's conduct and are continuing to engage in fraudulent and corrupt conduct.

375. Plaintiff has submitted multiple notifications to Defendants BPD and the City of Boston, regarding the dishonest conduct and the incorrect information upon which the arbitration award is based in an effort to have his file corrected.

376. The response of Defendants and unwillingness to investigate the situation supports the conclusion that the arbitration award was procured by corruption, fraud and other undue means.

377. As described herein, Plaintiff submitted a public record request and a personnel file request seeking an unredacted copy of the IAD investigation report that is directly relevant to the untruthfulness accusation and arbitration award, but this document still being withheld by the Defendants, despite an Order to produce it from the Supervisor of Records for the Commonwealth of Massachusetts.

378. The unwillingness to correct Plaintiff's record and refusal to provide relevant information and documents indicates a lack of transparency and a policy and practice of dishonestly throughout the department, and thus the Court should vacate the Arbitrator's May 24, 2013 Decision and Award, pursuant to G.L. c.150C, § 11(a)1.

379. Since the arbitration award in this case is based on false testimony from Attorney Taub, results from the unlawful retaliatory pursuit of a meritless complaint against Plaintiff, and involves punishing an employee for exercising his legally protected rights including his constitutional rights and rights as a union member, it offends public policy and must be vacated under G.L. c. 150C, § 11.

380. Additionally, the court should vacate the arbitrator's award on grounds that he exceeded his authority. He lacked authority to decide the issue of Plaintiff's alleged untruthfulness during the IAD interview, as that was not the accusation in the

Complaint Control Form 1920, Complaint #5953, and it was only constructed after exculpatory evidence surfaced showing the original accusation was meritless.

381. Where the BPD lacks evidence to support an original untruthfulness accusation, it may not construct a new accusation, claiming Plaintiff was untruthful when interviewed about the original accusation.

382. As Plaintiff did not receive notice of the accusation and Defendants unlawfully withheld the IAD report upon which the accusation is based, the issue of untruthfulness was not properly before the arbitrator.

383. Defendants were required to provide the IAD report to Plaintiff in 2008 when Fong first made the accusation as per the Personnel Record Law but failed to do so, and now have failed to provide it when ordered by the Massachusetts Supervisor of Records.

384. The collective bargaining agreement between the BPD and Plaintiff's union confers authority on the arbitrator to decide disputes but here he lacked authority to issue a binding decision because the BPD violated the agreement through its dishonest, fraudulent and/or otherwise unlawful actions described herein.

385. This Court has authority to vacate the arbitrator's ruling because the arbitrator exceeded his authority.

386. Plaintiff is entitled to recover his attorneys fees from Defendants in seeking to have the arbitrator's award vacated.

## COUNT XIV
## TORTIOUS INTERFERENCE WITH EMPLOYMENT
## AND ADVANTAGEOUS BUSINESS RELATIONSHIP
(As to Taub and Fong individually)

387. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

388. As more fully described above, Plaintiff has had an advantageous employment relationship with Defendant BPD, resulting in economic benefit to Plaintiff and other benefits.

389. Defendants Taub and Fong have known of this relationship at all times relevant hereto.

390. Defendants Taub and Fong interfered with and caused harm to Plaintiff's relationship with BPD through various unlawful and unethical acts including fraud, intentional misrepresentations, defamation, violations of the Department's public integrity policy, retaliation, intentional withholding of exculpatory evidence, withholding of a personnel record, violation of Plaintiff's civil rights and right to due process, and other actions described herein.

391. Defendants Taub and Fong acted with improper motives and used improper means to carry out their actions as described herein.

392. Plaintiff has suffered and is continuing to suffer economic and noneconomic losses as a result of the actions of Defendants Taub and Fong including but not limited to lost wages, the expense of attorneys fees, emotional distress, lost opportunities for career advancement, and harm to his reputation.  Plaintiff has suffered harm to his ability to perform his job functions and harm to his credibility as a government witness, as Defendants have caused him to be a "Giglio-impaired" witness.

393. Plaintiff is entitled to recover damages from Defendants Taub and Fong individually as a result of their above-described unlawful conduct.

**COUNT XV**
**DEFAMATION**
(As to Taub and Fong individually)

394. Plaintiff incorporates by reference the preceding paragraphs of his Complaint as though fully set forth herein.

395. As described herein, Defendants Taub and Fong published false statements of fact about Plaintiff to one or more third parties, in which they accused Plaintiff of acts of dishonesty, including but not limited to the act of lying to an IAD investigator during the January 18, 2006 interview.

396. The statements were published by Taub and Fong to an arbitrator, one or more federal prosecutors, and other third parties, including but not limited to the Boston Herald newspaper who published the statements to the general public in its newspaper and online, on or about July 10, 2009.

397. The aforementioned statements by Taub and Fong cast Plaintiff in a negative light as they call into question his moral character, truthfulness and credibility, traits that are essential to the performance of his job with the BPD.

398. Defendants' aforementioned statements have caused Plaintiff to be permanently labeled as someone who cannot be trusted to tell the truth, in a legal proceeding or otherwise.

399. At the time the statements were made, Defendants Taub and Fong held influential positions with Defendant BPD.

400. Defendants Taub and Fong made the aforementioned statements knowing they were false or with reckless disregard of their truth or falsity.

401. Plaintiff has suffered and will continue to suffer economic and noneconomic damages as a result of Defendants' statements, including emotional distress that is impacting his

health, and injury to his reputation caused by the permanent negative mark on his record labeling him as untruthful and negatively impacting his opportunities with regard to promotions within the BPD in the past and for the remainder of his career in law enforcement.

402. Accordingly, Plaintiff is entitled to recover damages from Defendants Taub and Fong as a result of their above-described unlawful conduct.

403. Plaintiff learned of the defamatory nature of Defendants' statements upon receiving a redacted copy of Sergeant Chinetti's February 6, 2006 IAD investigation report in late 2017.

404. Plaintiff learned that the BPD was ignoring the report and condoning the defamatory statements in 2019 when he learned that the BPD would not remove the untruthfulness determination from his file.

405. The defamatory statements by Defendants Taub and Fong were made as an unlawful retaliatory measure in response to Plaintiff exercising his legal rights and challenging the BPD's actions, as described herein.

406. Defendant BPD has failed to remove the untruthfulness determination from Plaintiff's record that was caused by the defamatory statements, despite receiving information showing the statements are false.

407. Defendant BPD is liable to Plaintiff for the economic and non-economic damages he has suffered, based on the actions of its agents and representatives including Defendant Taub and Defendant Fong, and the BPD is directly liable for its failure to take corrective action.

408. The harm Plaintiff has suffered as a result of Defendants' unlawful conduct is irreparable, especially given that the law enforcement community in Boston is a small one where individuals know one another and Plaintiff's value to the Department as a detective and as a government witness in court proceedings has been greatly diminished.

409. Based on the content of Defendants' statements (i.e. accusations of dishonesty), and the fact that they were made by representatives of Plaintiff's employer, the statements are automatically presumed to damage Plaintiff's reputation and opportunities for future advancement in law enforcement, as a matter of law.

410. Defendants' conduct constitutes defamation *per se* as a matter of law, and Plaintiff is entitled to recovery without proof that he suffered economic damages, as the content and source of Defendants' statements create an automatic inference that Plaintiff has sustained such damage, and Plaintiff is entitled to special damages, including punitive damages.

411. Plaintiff is entitled to recover damages from the BPD and from Defendants Taub and Fong individually as a result of the above-described unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants on each and every count of the Verified Complaint, including:

(1) Ordering Defendants to immediately and permanently remove the untruthfulness determination from Plaintiff's record;

(2) Ordering Defendants to circulate a notice throughout the BPD stating that the previous untruthfulness determination against Plaintiff was erroneous and he has been cleared with respect to same;

(3) Declaring the February 6, 2006 IAD investigation report to be a public record and/or a personnel record and ordering Defendants to provide Plaintiff with an unredacted copy;

(4) Vacating Arbitrator Ryan's May 24, 2013 Arbitration Decision and Award;

(5) Ordering Defendants to pay monetary damages to Plaintiff including but not limited to lost earnings to date and reasonably anticipated future lost earnings, damages for emotional distress and harm to psychological and physical health, damages for harm to reputation, lost educational opportunities, and lost opportunities for promotion and career advancement, attorneys fees, costs, interest, and special damages including punitive damages and multiple damages;

(6) Ordering Defendants to remove their order barring Plaintiff from contacting the BPD Internal Affairs Division; and

(7) Ordering such other legal, equitable and declaratory relief to Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.**

I HEREBY ATTEST AND CERTIFY ON

**April 28, 2020** , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:_____

First Asst. Clerk

Dated **2/4/20**

Respectfully submitted,
Plaintiff, Alvin Holder,
By His Attorneys,

Julie A. Halaby [BBO No. 630124]
juliehalaby@halabylegal.com
Jon A. Halaby [BBO No. 666003]
jonhalaby@halabylegal.com
**Halaby Law Group, P.C.**
14 Main Street
Hingham, Massachusetts 02043
Tel: (781) 749-0909
Fax: (781) 749-0997

40

## VERIFICATION

I, Alvin Holder, this _3_ day of _February_, 2020, hereby verify that the above-stated facts are true and accurate to the best of my ability and based upon my first-hand personal knowledge or information and belief that I developed from third parties or independent research.

_____
Alvin Holder

Dated _Feb 3, 2020_

41

# EXHIBIT A



1 Schroeder Plaza, Boston, MA 02120-2014

TO:     Deputy Superintendent Marie L. Donahue
        Assistant Chief, Bureau of Internal Investigations

FROM:   Sergeant William J. Chinetti
        Internal Affairs Division

SUBJECT: Internal Affairs Case #240-05, Complaint Control #5953, Alleging
         Violations of Rules **102 § 4 (Neglect)** and **102 § 23 (Truthfulness)**
         Against Officer Alvin Holder Assigned to District B-3.  This Case also
         Alleges a Violation of Rule **102 § 4 (Neglect)** Against Officer Frank Lee
         Assigned to District B-2.

DATE:   February 6, 2006

Ma'am:

        I respectfully submit the following report in reference to the above complaint:

## SUMMARY OF COMPLAINT CONTROL FORM 1920 (Attachment # 1)

        Officer Holder was untruthful regarding information that he supplied to
Superintendent Johnson.  Officer Holder was negligent regarding the shooting scene of
a firearm discharge.

        Officer Lee was negligent while handling a loaded firearm.

## INVESTIGATIVE SUMMARIES:

### Summary of Interview of Police Officer Alvin Holder (Attachment #2)

        Interview taken on January 18, 2006, by Sergeant Detective William Chinetti,
assisted by Lieutenant Detective Arthur Stratford at Boston Police Headquarters inside
the offices of the Internal Affairs Division.  The interview began with Officer Holder
signing a Carney Form whereby he asserted his 5th Amendment privilege and waived
his Article 12-privilege **(Attachment #3).**  Interview is as follows:

        Officer Holder stated that on October 19, 2005, he might have worked the Valet
Parking detail on Francis St. until 3:30 PM.  Between 7:00-7:30 PM Officer Holder,
Officer Frank Lee, Officer Eric Mencey, and ▮▮▮▮▮▮▮▮▮▮ drove from Officer
Holder's house, to the Rhode Island border, to purchase Power Ball tickets at a

convenience store. Officer Holder stated that from the time everyone met at his house, until the conclusion of this incident, no one had consumed any alcohol.

Officer Holder stated that at 9:40 PM he was operating his Ford F150 pick up at the intersection of Raldnie Rd. and Stonehill Rd. Officer Holder stopped while a vehicle in front of him backed into a driveway. Officer Mencey was seated in the passenger seat, Officer Lee was seated in the rear seat behind Officer Mencey, and ▆▆▆▆▆▆ was seated in the rear seat behind Officer Holder.

Officer Lee stated, "Hey Al take this." Officer Holder heard a bang, observed a hole in the passenger side of the windshield, placed the car in park, turned on the interior light, and observed smoke inside of his vehicle. Officer Holder observed Officer Mencey holding his shoulder, he turned, and took a Walther 380 Cal. Serial #S029564 handgun from Officer Lee's hand. Officer Holder made sure that the hammer of the firearm was down and then actived the safety.

Officer Holder stated that he was the owner of the Walther, and that Officer Lee was borrowing it because he was considering purchasing it.

Officer Holder visually scanned the area and did not observe anyone injured from the projectile that exited the vehicle. Officer Holder did not exit the vehicle to check on the well being of any residents in the immediate area, or the occupants of the vehicle that was backing into the driveway.

Officer Holder did not notify the Operations Division of the firearm discharge, and the fact that Officer Mencey was shot during the discharge. Officer Holder did not request H&H to respond to administer medical treatment to Officer Mencey. Officer Holder did not notify District E-18 that there was a firearm discharge nor did he attempt to secure the area.

Officer Holder stated that since he was close to the Faulkner Hospital, he immediately transported Officer Mencey to the hospital **(Attachment #4).** Officer Holder stated that Officer Mencey's shirt was lightly stained with blood from the entrance and exit wound. Officer Mencey told Officer Holder, "I'm ok, and don't get me killed trying to get me to the hospital." Officer Mencey called the District B-2 Duty Supervisor from his cell phone and informed him of the situation.

When Officer Holder arrived at the Faulkner Hospital he called Lieutenant Patrick Cullity at District B-2, informed him of the location, and District that the firearm was discharged. Officer Holder stated that he did not inform Lieutenant Cullity who discharged the firearm.

Officer Holder stated that at the hospital ▆▆▆▆▆▆▆▆▆ left before the arrival of the responding Boston police units. Officer Holder stated that ▆▆▆▆▆▆ was having family problems, and that ▆▆▆▆▆ was moving in with him.

███████████████ stated that he had nothing to do with this, it was too much, and he left the hospital.

Officer Holder stated that after 71/2 years as a police officer, he has responded to shooting calls while on duty. Officer Holder stated that if he responded to a shooting scene, and one of the witness stated they had nothing to do with the shooting, and they were having family problems, he would allow them to leave the scene prior to the arrival of the investigating units, as long as he had a positive identification.

Officer Holder stated that Sergeant Colon took possession of his Walther 380 at the Faulkner Hospital.

Officer Holder stated that Superintendent Bobbie Johnson interviewed him at the Faulkner Hospital. Officer Holder stated that Superintendent Johnson asked him who was shot, and Officer Holder responded, "Officer Mencey." Superintendent Johnson asked who had the gun, and he stated, "Officer Lee." Superintendent Johnson asked who was driving and Officer Holder stated he was.

Superintendent Johnson informed Officer Holder, "Since you were driving, you are a witness and you can tell me what happened." Officer Holder stated that he chuckled during the interview, because he believed that Superintendent Johnson was trying to bait him into saying something. Officer Holder responded, "It was an accidental discharge from the back to the front, and that he would provide more information after speaking with a union representative." Officer Holder stated that he did not directly tell Superintendent Johnson that Officer Lee discharged the firearm.

Officer Holder stated that the union representative Officer Jay Broderick told him not to say anything. Therefore, Officer Holder did not tell Superintendent Johnson who discharged the firearm or the details around the discharge. Officer Holder stated that he wanted to provide Superintendent Johnson with as little information as possible.

Officer Holder stated that Lieutenant Detective Robert Harrington read him his Miranda warning at the Faulkner Hospital. Officer Holder stated that the union attorney advised him to invoke his Miranda rights and Officer Holder complied.

Officer Holder stated that when he returned home later that evening, he walked through the shooting scene. Officer Holder stated that a couple of days later, he recovered a bullet fragment on the street that was discharged from the Walther 380. Officer Holder notified District E-18, Attorney Anderson, and stayed on scene until someone from E-18 responded.

## Summary of Interview of Police Officer Frank Lee (Attachment #5)

Interview taken on January 18, 2006, by Sergeant Detective William Chinetti, assisted by Lieutenant Detective Arthur Stratford at Boston Police Headquarters inside the offices of the Internal Affairs Division. The interview began with Officer Lee signing

a Carney Form whereby he asserted his 5th Amendment privilege and waived his Article 12-privilege **(Attachment #6)**. Interview is as follows:

Officer Lee stated that after completing a "Day" tour of duty on October 19, 2005, he had a beer at his residence, and arrived at Officer Holder's house at approximately 7:00 PM.  Officer Mencey and ████████████ also met at officer Holder's house. Officer Lee stated that they all went to a Rhode Island convenience store in Officer Holders truck to purchase Power Ball tickets and arrived at approximately 7:30 PM.

Officer Lee stated that they immediately returned to Officer Holder's house. Officer Holder was operating the vehicle, Officer Lee was seated in the rear seat behind Officer Mencey, and ████████████ was seated in the rear seat behind Officer Holder.

Officer Lee was in possession of a Walther 380 Cal. Serial #S029564 handgun that he borrowed from Officer Holder. Officer Holder was the legal owner of the firearm. Officer Lee stated that he was going to Officer Holder's house with the intention of drinking.  Therefore, he decided to return the firearm to Officer Holder while they were inside Officer Holder's vehicle.

Officer Lee stated that at approximately 9:40 PM Officer Holder was stopped at the intersection of Raidne Rd. and Stonehill Rd. waiting for a vehicle to back out of a driveway.  Officer Lee removed a loaded Walther 380 Cal. Serial #S029564 handgun from an open nylon holster that was positioned inside his pants and clipped to them. Officer Lee stated that the holster was falling in and out because his pants were loose. Officer Lee stated that he did not move around in anyway that caused the holster to become loose.  Officer Lee stated that he was sitting in an uncomfortable position because there were so many things in the vehicle, and this helped attribute to the holster becoming loose.

Officer Lee stated that he did not remove the handgun as instructed at the Boston police firing range.  He stated that a fully loaded clip was in the firearm when he removed it from the holster.  Officer Lee also stated that there was a round in the chamber and his finger was not outside of the trigger guard, when he attempted to pass the firearm to Officer Holder.  Officer Lee stated that his finger was on the trigger, and the firearm discharged.  Officer Lee thought the firearm safety was activated from when he placed the firearm into the holster earlier in the day.

A round from the Walther entered Officer Mencey's shoulder, exited his shoulder, and exited the vehicle through the passenger side of the windshield.  Officer Holder took the firearm from Officer Lee.

Officer Lee stated that he did not notify the Operations Division, District E-18, or anyone else of the firearm discharge.  Officer Lee stated that he did not check on the well being of the residents in the area, and he did not secure the shooting scene.

Officer Lee did not request H&H to respond to administer medical treatment to Officer Mencey.

Officer Lee stated that Officer Holder immediately drove to the Faulkner Hospital. Officer Lee stated while at the Faulkner Hospital, he spoke with union representative Officer Jay Broderick and Attorney Drechsler. Lieutenant Detective Robert Harrington administered Officer Lee his Miranda warning, and Officer Lee invoked his right.

Officer Lee stated that he did not return to the scene of the discharge later that evening or early the next morning to assist with the investigation.

## INVESTIGATION

On October 19, 2005, Officer Holder, Officer Lee, Officer Mencey, and ▓▓▓▓▓ ▓▓▓▓▓▓ went to a Rhode Island convenience store to purchase Power Ball tickets.

After purchasing the tickets the group returned to Officer Holder's house. Officer Holder was operating the vehicle, Officer Lee was seated in the rear seat behind Officer Mencey, and ▓▓▓▓▓▓▓▓▓▓ was seated in the rear seat behind Officer Holder.

Officer Holder was stopped at the intersection of Raldne Rd. and Stonehill Rd., waiting for a vehicle to back into a driveway. Officer Lee removed a loaded Walther 380 Cal. firearm that was owned by Officer Holder, from a holster that was positioned inside his pants. The firearm discharged, a round entered Officer Mencey's shoulder, and exited the vehicle though the windshield. Officer Holder took the firearm from Officer Lee.

Officer Holder immediately drove to the Faulkner Hospital. Officers Holder and Officer Mencey informed Lieutenant Cullity that they were involved with an accidental discharge and that Officer Mencey was shot. Numerous Boston police personnel responded to the Faulkner Hospital as a result of the incident.







Respectfully submitted,

Sergeant William Chinetti
Internal Affairs Division

Contents Noted & Approved

Deputy Superintendent Marie L. Donahue
Assistant Chief, Bureau of Internal Investigations

# EXHIBIT B



# The Commonwealth of Massachusetts
William Francis Galvin, Secretary of the Commonwealth
Public Records Division

Rebecca S. Murray
*Supervisor of Records*

January 9, 2019
**SPR18/2094**

Shawn A. Williams, Esq.
Director of Public Records
City of Boston
1 City Hall Plaza, Room 615
Boston, MA 02201

Dear Attorney Williams:

I have received the petition of Julie Halaby, Esq. of *Halaby Law Group, P.C.* on behalf of Detective Alvin Holder appealing the response of the Boston Police Department (Department) to a request for public records. G. L. c. 66, § 10A; see also 950 C.M.R. 32.08(1). Specifically, on September 24, 2018, Attorney Halaby requested "[t]he complete Internal Affairs Division (IAD) file for IAD case #240-05, including but not limited to a complete and unredacted copy of the February 6, 2006 report from Sgt. William Chinetti to Deputy Supt. Marie Donahue in that case (Investigative report)." The Department provided a response on September 27, 2018, which included portions of the responsive records in redacted form. The Department denied access to the Investigative report because Attorney Halaby has a unique right of access to the records and pursuant to Exemption (f) of the Public Records Law. G. L. c. 4, § 7(26)(f). Unsatisfied with the Department's response, Attorney Halaby petitioned this office and this appeal, SPR18/2094, was opened as a result. This appeal pertains to the Investigative report only.

*Purpose of request; identity of requestor*

Please note that the reason for which a requestor seeks access to or a copy of a public record does not afford any greater right of access to the requested information than other persons in the general public. The Public Records Law does not distinguish between requestors. Access to a record pursuant to the Public Records Law rests on the content of the record and not the circumstances of the requestor. See Bougas v. Chief of Police of Lexington, 371 Mass. 59, 64 (1976). Accordingly, Attorney Halaby's purpose in making the request has no bearing on the public status of any existing responsive records.

It should be noted that the discovery process and the Public Records Law are two distinct and independent avenues for gaining access to records. The Massachusetts Supreme Judicial Court has held that while a party's access to records may be limited by the Public Records Law,

SPR18/2094

this may not preclude obtaining the records through discovery. Commonwealth v. Wanis, 426 Mass. 639 (1998). See also 950 C.M.R. 32.08(1)(a) (the administrative appeal process "shall not apply to records in which an individual, or a representative of the individual, has a unique right of access to the record through statutory, regulatory, judicial or other applicable means"). As such, Attorney Halaby may wish to consider another means of seeking to obtain any existing responsive records.

### The Public Records Law

The Public Records Law strongly favors disclosure by creating a presumption that all governmental records are public records. G. L. c. 66, § 10A(d); 950 C.M.R. 32.03(4). "Public records" is broadly defined to include all documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any town of the Commonwealth, unless falling within a statutory exemption. G. L. c. 4, § 7(26).

It is the burden of the records custodian to demonstrate the application of an exemption in order to withhold a requested record. G. L. c. 66, § 10(b)(iv); 950 C.M.R. 32.06(3); see also Dist. Attorney for the Norfolk Dist. v. Flatley, 419 Mass. 507, 511 (1995) (custodian has the burden of establishing the applicability of an exemption). To meet the specificity requirement a custodian must not only cite an exemption, but must also state why the exemption applies to the withheld or redacted portion of the responsive record.

If there are any fees associated with a response a written, good faith estimate must be provided. G. L. c. 66, § 10(b)(viii); see also 950 C.M.R. 32.07(2). Once fees are paid, a records custodian must provide the responsive records.

### The Department's September 27th response

In its September 27, 2018 response, the Department, referencing a Public Records Regulation, 950 C.M.R. 32.06(1)(g), states that "[a]s counsel for Detective Holder, you have a 'unique right of access' to these records outside of the Public Records Law. Accordingly, the Department will not consider this as a public records request but will provide the records [Attorney Halaby is] seeking in response to an information request." The Department, however, encloses a copy of the IAD case file.

The Department asserts that should Attorney Halaby's request be treated as a public records request, it would withhold the Investigative reports from disclosure under Exemption (f) because, they ". . . are confidential and investigatory." The Department states "[t]he exemption allows investigative officials to withhold materials that could compromise investigative efforts if disclosed. Accordingly, a records custodian may withhold confidential investigative techniques indefinitely since their disclosure would prejudice future law enforcement efforts." As such, the Department asserts that it ". . . withheld these reports as they contain information used to determine the charges that were levied against Officer Lee and Detective Holder. These reports contain the opinions and recommendations of the investigations and disclosing this information

Shawn A. Williams, Esq.                                    SPR18/2094
Page 3
January 9, 2019

would expose the techniques used in firearm investigations and Internal Affairs Investigations."

*Exemption (f)*

Exemption (f) permits the withholding of:

investigatory materials necessarily compiled out of the public view by law
enforcement or other investigatory officials the disclosure of which materials
would probably so prejudice the possibility of effective law enforcement that such
disclosure would not be in the public interest

G. L. c. 4, § 7(26)(f).

A custodian of records generally must demonstrate a prejudice to investigative efforts in
order to withhold requested records. Information relating to an ongoing investigation may be
withheld if disclosure could alert suspects to the activities of investigative officials. Confidential
investigative techniques may also be withheld indefinitely if disclosure is deemed to be
prejudicial to future law enforcement activities. Bougas v. Chief of Police of Lexington, 371
Mass 59, 62 (1976). Redactions may be appropriate where they serve to preserve the anonymity
of voluntary witnesses. Antell v. Attorney Gen., 52 Mass. App. Ct. 244, 248 (2001); Reinstein v.
Police Comm'r of Boston, 378 Mass. 281, 290 n.18 (1979). Exemption (f) invites a "case-by-
case consideration" of whether disclosure "would probably so prejudice the possibility of
effective law enforcement that such disclosure would not be in the public interest." See
Reinstein, 378 Mass. at 289-90.

The Department asserts that the Investigative reports ". . . contain information used to
determine the charges that were levied against Officer Lee and Detective Holder, . . . the
opinions and recommendations of the investigations, and [that disclosure] . . . would expose the
techniques used in firearm investigations and Internal Affairs Investigations." However, it is
unclear how disclosure of the Investigative reports would reveal confidential investigative
techniques that are unique to the Department or how disclosure "would probably so prejudice the
possibility of effective law enforcement that such disclosure would not be in the public interest"
as required by Exemption (f). It is additionally uncertain why records cannot be redacted to
prevent the disclosure of the Department's techniques used in its firearm investigations and
Internal Affairs Investigations. See Reinstein v. Police Comm'r of Boston, 378 Mass. 281, 289-
90 (1979) (the statutory exemptions are narrowly construed and are not blanket in nature). Any
non-exempt, segregable portion of a public record is subject to mandatory disclosure. G. L. c. 66,
§ 10(a).

**Unique right of access; application of administrative appeals process**

In its response, the Department asserts that because Attorney Halaby is counsel to
Detective Holder, she has a unique right of access to the records outside of the Public Records
Law. However, it is unclear how Attorney Halaby has a unique right of access thereby barring

Shawn A. Williams, Esq.                                    SPR18/2094
Page 4
January 9, 2019

the application of the administrative appeal process as required under the Public Records Law. In her petition for appeal, Attorney Halaby explains that "[t]he Department has withheld the report from Detective Holder since 2006 and withheld it from his former attorney in multiple proceedings where accusations were made against him. The Department has denied me access to the report as his current attorney. It has failed to produce it to me in response to my multiple requests including my request for his personnel file, which violates the Personnel Record Law, M.G.L. c. 149, s. 52. . . ."

Accordingly, based on the information provided by Attorney Halaby in her petition, it is unclear how she has a unique right of access to the requested records. The Department must identify the means affording Attorney Halaby a "unique right of access" and explain its applicability or apply the Public Records Law to the request and explain with specificity how Exemption (f) applies to withhold the responsive records in their entirety. I understand a Public Records Division staff attorney contacted your office about this appeal but was unable to reach you prior to the issuance of this decision.

*Conclusion*

Given that the Department did not meet its burden to explain how an exemption applies to the records, the requested records may not be withheld. Accordingly, the Department is ordered to review the Investigative reports, redact where necessary, and provide Attorney Halaby with responsive records, provided in a manner consistent with this order, the Public Records Law, and its Regulations within ten business days. A copy of any such response must be provided to this office. It is preferable to send an electronic copy of this response to this office at pre@sec.state.ma.us. The Department may file a request for reconsideration of this determination within ten business days of the date of this determination letter.

Sincerely,

*Rebecca Murray*

Rebecca S. Murray
Supervisor of Records

cc: Julie Halaby, Esq.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 20-0380F | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): Alvin Holder | COUNTY |
|---|---|
| ADDRESS: 4 Mansen Court, Hyde Park, MA 02136 | **Suffolk** |

| DEFENDANT(S): Boston Police Dept., City of Boston, William Gross, William Evans, |
|---|
| Edward Davis, Nicole Taub, Kenneth Fong and Shawn Williams |

| ATTORNEY: Julie Halaby, Jon Halaby, Halaby Law Group, P.C. |
|---|
| ADDRESS: 14 Main St., Hingham, MA 02043 |

| ADDRESS: 1 Schroeder Plaza, Boston, MA 02120 |
|---|

BBO: 630124, 666003

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A04 | employment | F | [X] YES [ ] NO |

*"If "Other" please describe:

Is there a claim under G.L. c. 93A?   [ ] YES   [X] NO

Is this a class action under Mass. R. Civ. P. 23?   [ ] YES   [X] NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ............................................................. $
    2. Total doctor expenses ............................................................. $
    3. Total chiropractic expenses ..................................................... $
    4. Total physical therapy expenses ............................................. $
    5. Total other expenses (describe below) ..................................... $
                                         Subtotal (A): $

B. Documented lost wages and compensation to date ........................... $ 600K+
C. Documented property damages to date ............................................ $
D. Reasonably anticipated future medical and hospital expenses ........... $
E. Reasonably anticipated lost wages ................................................. $ 1M+
F. Other documented items of damages (describe below) ...................... $ 500K +
  See Attachment A

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
  See Attachment A

TOTAL (A-F):$ 2.1 M+

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

  See Attachment A

TOTAL: $ same as above

Signature of Attorney/ Unrepresented Plaintiff: X _____   Date: 2/4/20

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

#### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____   Date: 2/4/20

I HEREBY ATTEST AND CERTIFY ON
April 28, 2020 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
First Asst. Clerk

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (F) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Summary Process (Real Property)**

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

### TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

**A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.**
**FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY**
**MAY RESULT IN DISMISSAL OF THIS ACTION.**

Alvin Holder v. Boston Police Department, et. al.

# CIVIL ACTION COVER SHEET - ATTACHMENT "A"

Tort Claims:

## Section F: Other documented items of damage:

Damage to personal and professional reputation / goodwill;  Harm to his ability to perform his job as a police officer and his ability to participate in basic life activities; Lost educational and career opportunities and opportunities for advancement; Emotional Distress and harm to psychological and physical health; Attorneys fees; Costs; and Interest.

## Section G: Brief description of Plaintiff's injury, including nature and extent of injury (describe).

Plaintiff is the victim of a false accusation of untruthfulness by fellow BPD employees and ongoing fraudulent activity by his employer (the BPD) and other Defendants to cover it up.  For over ten years Plaintiff has had the untruthfulness determination in his record, which BPD has not removed despite recent surfacing of a BPD Internal Affairs report showing it is false, and showing that a BPD attorney defrauded the arbitrator into ruling against Plaintiff in 2013 by withholding the report from evidence and misrepresenting its contents.

Plaintiff has suffered irreparable harm to his reputation because the untruthfulness finding has caused others to perceive him as untrustworthy, which is particularly problematic given that he is a police officer and being credible is a key part of his job.  Plaintiff has a permanent mark on his record and it harms his ability to testify as a government witness.

Plaintiff was unable to finish completing his bachelor's degree and has been deprived of multiple promotions within the BPD and more than $600,000.00 in compensation, as a result of the false accusations and fraudulent conduct by Defendants.  It is anticipated that, going forward, Plaintiff will continue to experience lost opportunities for promotion and will suffer lost earnings of more than an estimated $1,000,000.00 between now and his anticipated retirement.  Plaintiff is entitled to multiple damages for the lost wages incurred.

Plaintiff also had his personal firearm taken away for four years as a retaliatory measure and is entitled to compensation for conversion of property.  Plaintiff has incurred significant attorneys fees investigating these unlawful acts, requesting documents and information from the BPD and the City of Boston to which he is legally entitled, seeking removal of the untruthfulness determination, and affording the BPD the chance to rectify this situation.  But the BPD and the City of Boston have outright ignored his requests, refusing to investigate and refusing to take

any action, and violating an administrative Order to produce records, and violating state and federal law. Plaintiff is entitled to recovery of ALL of his attorneys fees, including fees for all pre-suit efforts to obtain relief from Defendants and all fees associated with this lawsuit.

Plaintiff's constitutional rights have also been violated, and he has been treated less favorably than white employees of BPD in the terms and conditions of his employment.

Plaintiff is also entitled to six figure damages for his emotional distress, given the harm to his psychological and physical health.

All damage figures are preliminary and Plaintiff reserves his right to provide further information in the future, including an analysis of damages from one or more experts.

NOTIFY

02/13

3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 20-0380F

ALVIN HOLDER,                                    )
                                                 )
        Plaintiff,                               )
                                                 )
v.                                               )
                                                 )
BOSTON POLICE DEPARTMENT,                        )
CITY OF BOSTON,                                  )
WILLIAM GROSS, in his Official Capacity          )
as the COMMISSIONER OF THE BOSTON                )
POLICE DEPARTMENT,                               )
WILLIAM EVANS and EDWARD DAVIS,                  )
each in his Official Capacity as former          )
COMMISSIONER OF THE BOSTON                       )
POLICE DEPARTMENT,                               )
NICOLE TAUB, individually and in her             )
Official Capacity as Former Senior Staff Attorney )
for the BOSTON POLICE DEPARTMENT,                )
KENNETH FONG, individually and                   )
in his Official Capacity as                      )   (sc)
BOSTON POLICE DEPARTMENT CAPTAIN,                )
and SHAWN WILLIAMS, in his Official Capacity     )
as DIRECTOR OF PUBLIC RECORDS AND                )
RECORDS ACCESS OFFICER for the                   )
CITY OF BOSTON AND THE BOSTON                     )
POLICE DEPARTMENT,                               )
                                                 )
        Defendants.                              )

SUFFOLK, ss.    SUPERIOR COURT DEPT.
February 12, 2020
ALLOWED BY THE COURT
Ames , J.)
ATTEST:
Assistant Clerk

Notice sent
2/18/2020
J. A. H.
H. LAW G.,P.C.
J.A. H.

## MOTION TO APPOINT SPECIAL PROCESS SERVER

The Plaintiff hereby requests pursuant to Mass. R. Civ. Proc. 4 (c), that this Honorable
Court appoint as special process server South Coast Legal Services, Inc. d/b/a The Constable's
Network, by its Deputy Sheriffs, Constables, or Agents, who are qualified persons over the age
of 18, knowledgeable in the service of process, and who are disinterested parties in this action.
Specifically, the Plaintiff requests that the court authorize the special process servers to serve
process issued by this Court in accordance with M.G. L. c. 235.

**Respectfully submitted,**
**Plaintiff, Alvin Holder**
By His Attorneys,

Julie A. Halaby, Esq. BBO No. 630124
Jon A. Halaby, Esq.   BBO No.:  666003
**Halaby Law Group, P.C.**
14 Main Street
Hingham, MA 02043
Tel: (781) 749-0909
Fax: (781) 749-0997
juliehalaby@halabylegal.com
jonhalaby@halaylegal.com

Dated  2/7/20

I HEREBY ATTEST AND CERTIFY ON
April 28, 2020 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

First Asst. Clerk



SUFFOLK SUPERIOR COURT
Commonwealth of Massachusetts

SUFFOLK, SS.

2020 APR -9 A 11:06

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

THE COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
DOCKET NO. _2084 CV 00380_

_Alvin Holder_____, PLAINTIFF(S),

v.

_Boston Police Department,_
_City of Boston, et al_____, DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO _William Gross, in his official_ (Defendant's name)
_capacity as the Commissioner of the Boston Police Department,_

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the _Suffolk Superior_____ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
   the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
   opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
   to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
   extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
   copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, _Suffolk_____ Court,
      _3 Pemberton_ _Boston_ (address), by mail or in person, _Superior_ AND

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following
      address: _Halaby Law Group, PC, 14 Main St, Hingham, MA 02043_

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
   must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
   Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
   use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
   based on the same facts or transaction described in the Complaint, then you must include those claims
   in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
   lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your
   Answer or in a written demand for a jury trial that you must send to the other side and file with the
   court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
   **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
   to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
   you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
   described in the rules of the Court in which the complaint was filed, available at
   www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on February 28 , 2020.

_Michael Joseph Donovan_
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

**COMMONWEALTH OF MASSACHUSETTS**
**Superior Court Department**
**Suffolk County Division**
**Docket/Case No: TBD 2084CV00380**

I hereby certify and return that today, March 5, 2020, at 10:14 AM, I served a true and attested copy of the within Summons together with a copy of the Complaint in this action upon the within named William Gross, by leaving said copies with Jennifer Samson along with Civil Cover Sheet w/Attachment A, Exhibit A and B and Civil Tracking Order, at Commissioner Boston Police Department, 1 Schroder Plaza, Boston, MA 02120 his/her last and usual place of business. Furthermore, later this same day I mailed (first class postage prepaid) additional true and attested copies to the within named William Gross, at Commissioner Boston Police Department, 1 Schroder Plaza, Boston, MA 02120.

Signed under the pains and penalties of perjury today, March 5, 2020.

**Gavin Castagna**, Constable
& Disinterested Person over Age 18.    Total Fees: $55.00
**The Constable's Network**
764 Plain Street, Suite Two, Marshfield, MA, 02050-2171
(781) 837-0500 , (781) 837-0700 Fax

I HEREBY ATTEST AND CERTIFY ON
April 28, 2020
_____. THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

**First Asst. Clerk**



SUFFOLK SUPERIOR COURT
Commonwealth of Massachusetts

SUFFOLK, §S.

2020 APR -9 I A II: 06 IAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
MICHAEL JOSEPH DONOVAN VIL DOCKET NO. 2084 CV 00380
CLERK / MAGISTRATE

**Alvin Holder** _____, PLAINTIFF(S),

v.
**Boston Police Department,**
**City of Boston, et al.** _____, DEFENDANT(S)

SUMMONS

**Nicole Taub, individually and in her**
THIS SUMMONS IS DIRECTED TO **official capacity as Former Senior** (Defendant's name)
**Staff Attorney for the Boston Police Department**

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the **Suffolk Superior** Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your signed original response with the Clerk's Office for Civil Business, **Suffolk Superior** Court, **3 Pemberton Sq, Boston** (address), by mail or in person, **AND**
   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: **Halaby Law Group, PC, 14 Main St, Hingham, MA 02043**

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on **February 28**, 20**20**.

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___     Signature: _____

**COMMONWEALTH OF MASSACHUSETTS**
**Superior Court Department**
**Suffolk County Division**
**Docket/Case No: TBD 2084CV00380**

I hereby certify and return that today, March 18, 2020, at 1:53 PM, I served a true and attested copy of the within Summons together with a copy of the Complaint in this action upon the within named Nicole Taub, by leaving said copies along with Civil Cover Sheet w/Attachment A, Exhibit A and B and Civil Tracking Order, at 56 Faywood Avenue, Apartment 2, Boston, MA, 02128 *his/her* last and usual abode. Furthermore, later this same day I mailed (first class postage prepaid) additional true and attested copies to the within named Nicole Taub, at 56 Faywood Avenue, Apartment 2, Boston, MA, 02128.
Signed under the pains and penalties of perjury today, March 18, 2020.

*Gavin Castagna*
**Gavin Castagna**, Constable
& Disinterested Person over Age 18.     Total Fees: $55.00
**The Constable's Network**
764 Plain Street, Suite Two, Marshfield, MA, 02050-2171
(781) 837-0500 , (781) 837-0700 Fax

I HEREBY ATTEST AND CERTIFY ON
**April 28, 2020** . THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
First Asst. Clerk

61

**Commonwealth of Massachusetts**

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

SUFFOLK, SS.

2020 APR -9 A II:16

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

CIVIL DOCKET NO. 2084 CV 00380

Alvin Holder _____, PLAINTIFF(S),

v
Boston Police Department,
City of Boston, et al DEFENDANT(S)

**SUMMONS**

THIS SUMMONS IS DIRECTED TO Boston Police Department. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior Court, 3 Pemberton Sq, Boston (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Halaby Law Group, PC, 14 Main Street, Hingham, MA 02043

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to this lawsuit by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on **February 28**, 20 **20**.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___      Signature: _____

N.B.    TO PROCESS SERVER:

**COMMONWEALTH OF MASSACHUSETTS**
**Superior Court Department**
**Suffolk County Division**
**Docket/Case No: TBD 2084CV00380**

I hereby certify and return that today, March 5, 2020, at 10:14 AM, I served a true and attested copy of the within Summons together with a copy of the Complaint in this action upon the within named Boston Police Department, by giving in hand to Jennifer Samson, along with Civil Cover Sheet w/Attachment A, Exhibit A and B and Civil Tracking Order, Agent in Charge. Said service was effected at: Boston Police Department, 1 Schroeder Plaza, Boston, MA 02120. I HEREBY ATTEST AND CERTIFY ON

Signed under the pains and penalties of perjury today, March 5, 2020.

**April 28, 2020** THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

**Gavin Castagna**, Constable
**& Disinterested Person over Age 18.    Total Fees: $55.00**
**The Constable's Network**
764 Plain Street, Suite Two, Marshfield, MA, 02050-2171
(781) 837-0500 , (781) 837-0700 Fax

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

**First Asst. Clerk**

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
**Commonwealth of Massachusetts**

SUFFOLK, SS.

2020 APR -9 A 11: 06   TRIAL COURT OF THE COMMONWEALTH

MICHAEL JOSEPH DONOVAN   SUPERIOR COURT DEPARTMENT
CLERK / MAGISTRATE   CIVIL DOCKET NO. 2084 CV00380

Alvin Holder _____, PLAINTIFF(S),

v.

Boston Police Department,
City of Boston, et al. _____, DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO Kenneth Fong, individually and in his
Official Capacity as Boston _____. (Defendant's name)
Police Department Captain

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a.  Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior Court, 3 Pemberton Sq, Boston (address), by mail or in person, **AND**

    b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Halaby Law Group, PC, 14 Main street, Hingham, MA 02043

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically request a jury trial in your Answer** or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on ~~February 28~~, 20~~20~~.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the

COMMONWEALTH OF MASSACHUSETTS
Superior Court Department
Suffolk County Division
Docket/Case No: TBD 2084CV00380

I hereby certify and return that today, March 5, 2020, at 2:22 PM, I served a true and attested copy of the within Summons together with a copy of the Complaint in this action upon the within named Kenneth Fong, by giving in hand to Minhael Park, Clerk, along with Civil Cover Sheet w/Attachment A, Exhibit A and B and Civil Tracking Order, Agent in Charge. Said service was effected at: Boston Police Captain, 1 Schroder Plaza, Boston, MA 02120.
Signed under the pains and penalties of perjury today, March 5, 2020.

**Gavin Castagna**, Constable
& Disinterested Person over Age 18.    Total Fees: $55.00
**The Constable's Network**
764 Plain Street, Suite Two, Marshfield, MA, 02050-2171
(781) 837-0500 , (781) 837-0700 Fax

I HEREBY ATTEST AND CERTIFY ON
April 28, 2020, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:
First Asst. Clerk



SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
**Commonwealth of Massachusetts**
2020 APR -9 | A 11:06

SUFFOLK, SS.    TRIAL COURT OF THE COMMONWEALTH
MICHAEL JOSEPH DONOSUPERIOR COURT DEPARTMENT
CLERK / MAGISTRATECIVIL DOCKET NO. 2084 CV 00380

Alvin Holder_____ , PLAINTIFF(S),

v.
Boston Police Department,
City of Boston, et al._____ , DEFENDANT(S)

### SUMMONS

Edward Davis, in his official capacity as
THIS SUMMONS IS DIRECTED TO Former Commissioner of the Boston (Defendant's name)
Police Department

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

  a.  Filing your **signed original response** with the Clerk's Office for Civil Business, Suffolk Superior Court, 3 Pemberton Sq. Boston (address), by mail or in person, **AND**

  b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Halaby Law Group, PC, 14 Main St, Hingham, MA 02043

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _February 28_, 20_20_.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

**COMMONWEALTH OF MASSACHUSETTS**
**Superior Court Department**
**Suffolk County Division**
**Docket/Case No: TBD 2084CV00380**

I hereby certify and return that today, March 5, 2020, at 10:14 AM, I served a true and attested copy of the within Summons together with a copy of the Complaint in this action upon the within named Edward Davis, by leaving said copies with Jennifer Samson along with Civil Cover Sheet w/Attachment A, Exhibit A and B and Civil Tracking Order, at Former Commisoner, 1 Schroder Plaza, Boston, MA his/her last and usual place of business. Furthermore, later this same day I mailed (first class postage prepaid) additional true and attested copies to the within named Edward Davis, at Former Commisoner, 1 Schroder Plaza, Boston, MA.

Signed under the pains and penalties of perjury today, March 5, 2020.

*G Cast*

**Gavin Castagna**, Constable
**& Disinterested Person over Age 18.**     Total Fees: $55.00
**The Constable's Network**
764 Plain Street, Suite Two, Marshfield, MA, 02050-2171
(781) 837-0500 , (781) 837-0700 Fax

I HEREBY ATTEST AND CERTIFY ON
_April 28, 2020_, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
First Asst. Clerk

SUFFOLK SUPERIOR COURT
**Commonwealth of Massachusetts**

SUFFOLK, SS.

2020 APR -9 | A | 1:06 COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT

MICHAEL JOSEPH DONOVAN CIVIL DOCKET NO. 2084 CV 00380
CLERK / MAGISTRATE

_Alvin Holder_____, PLAINTIFF(S),

v.

_Boston Police Department,_
_City of Boston, et al._____, DEFENDANT(S)

### SUMMONS

_Shawn Williams, in his Official Capacity_
THIS SUMMONS IS DIRECTED TO _as Director of Public Records_. (Defendant's name)
_Access officer for the City of Boston and_
**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the _Suffolk Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
   the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
   opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
   to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
   extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court _and_ mail a
   copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, _Suffolk Superior_ Court,
      _3 Pemberton Sq. Boston_ (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following
      address: _Halaby Law Group, PC, 14 Main Street, Hingham MA 02043_

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
   must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
   Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
   use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
   based on the same facts or transaction described in the Complaint, then you must include those claims
   in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
   lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
   Answer or in a written demand for a jury trial that you must send to the other side and file with the
   court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
   **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
   to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If
   you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
   described in the rules of the Court in which the complaint was filed, available at
   www.mass.gov/courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on February 28, 2020.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on                         20      I served a copy of this summons,

**COMMONWEALTH OF MASSACHUSETTS**
**Superior Court Department**
**Suffolk County Division**
**Docket/Case No: TBD 2084CV00380**

I hereby certify and return that today, March 5, 2020, at 1:57 PM, I served a true and attested copy of the within Summons together with a copy of the Complaint in this action upon the within named Shawn Williams, by leaving said copies with Kelly Donovan Clerk, along with Civil Cover Sheet w/Attachment A, Exhibit A and B and Civil Tracking Order, at Director of Public Records, 1 Schroder Plaza, Boston, MA 02020 *his/her* last and usual place of business. Furthermore, later this same day I mailed (first class postage prepaid) additional true and attested copies to the within named Shawn Williams, at Director of Public Records, 1 Schroder Plaza, Boston, MA 02020.

Signed under the pains and penalties of perjury today, March 5, 2020.

*Gavin Castagna*

**Gavin Castagna**, Constable
& Disinterested Person over Age 18.      Total Fees: $55.00
**The Constable's Network**
764 Plain Street, Suite Two, Marshfield, MA, 02050-2171
(781) 837-0500 , (781) 837-0700 Fax

I HEREBY ATTEST AND CERTIFY ON
April 28, 2020 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
First Asst. Clerk



SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

**Commonwealth of Massachusetts**

2020 APR -9 A II:06

SUFFOLK, SS.                                TRIAL COURT OF THE COMMONWEALTH
                                            SUPERIOR COURT DEPARTMENT
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE        DOCKET NO. 2084 CV 00380

Alvin Holder _____, PLAINTIFF(S),

v.

Boston Police Department,
City of Boston, et al. _____ DEFENDANT(S)

### SUMMONS

William Evans, in his Official Capacity as

THIS SUMMONS IS DIRECTED TO Former Commissioner of the Boston (Defendant's name)
Police Department

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior _____ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a.  Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior Court, 3 Pemberton Sq, Boston (address), by mail or in person, **AND**

    b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Halaby Law Group, PC, 14 Main Street, Hingham, MA 02043

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _February 28_ , 20 _20_ .

_Michael Joseph Donovan_
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

### COMMONWEALTH OF MASSACHUSETTS
**Superior Court Department**
**Suffolk County Division**
**Docket/Case No: TBD 2084CV00380**

I hereby certify and return that today, March 5, 2020, at 10:14 AM, I served a true and attested copy of the within Summons together with a copy of the Complaint in this action upon the within named William Evans, by leaving said copies with Jennifer Samson along with Civil Cover Sheet w/Attachment A, Exhibit A and B and Civil Tracking Order, at Former Commissioner, 1 Schroder Plaza, Boston, MA 02120 his/her last and usual place of business. Furthermore, later this same day I mailed (first class postage prepaid) additional true and attested copies to the within named William Evans, at Former Commissioner, 1 Schroder Plaza, Boston, MA 02120.

Signed under the pains and penalties of perjury today, March 5, 2020.

_Gavin Castagna_
**Gavin Castagna, Constable**
& Disinterested Person over Age 18.     Total Fees: $55.00
**The Constable's Network**
764 Plain Street, Suite Two, Marshfield, MA, 02050-2171
(781) 837-0500 , (781) 837-0700 Fax

I HEREBY ATTEST AND CERTIFY ON
**April 28, 2020** , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:
First Asst. Clerk

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
Commonwealth of Massachusetts
2020 APR -9 A 11: 0

SUFFOLK, SS.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2084CV00380

Alvin Holder _____, PLAINTIFF(S),

v.

Boston Police Department,
City of Boston, et.al. _____, DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO City of Boston _____. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior Court, 3 Pemberton Sq. Boston (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Halaby Law Group, PC, 14 Main Street, Hingham, MA 02043 _____

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "**Motion to Dismiss**," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on February 28 , 20 20 .

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

**COMMONWEALTH OF MASSACHUSETTS**
**Superior Court Department**
**Suffolk County Division**
**Docket/Case No: TBD 2084CV00380**

I hereby certify and return that today, March 4, 2020, at 2:31 PM, I served a true and attested copy of the within Summons together with a copy of the Complaint in this action upon the within named City of Boston, by giving in hand to Regine DeSir, along with Civil Cover Sheet w/Attachment A, Exhibit A and B and Civil Tracking Order, Agent in Charge. Said service was effected at: City of Boston, One City Hall Square, Boston, MA 02201.

Signed under the pains and penalties of perjury today, March 4, 2020.

**Gavin Castagna**, Constable
**& Disinterested Person over Age 18.**      Total Fees: $55.00
**The Constable's Network**
764 Plain Street, Suite Two, Marshfield, MA, 02050-2171
(781) 837-0500 , (781) 837-0700 Fax

I HEREBY ATTEST AND CERTIFY ON
April 28, 2020
_____, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:_____

First Asst. Clerk

**COMMONWEALTH OF MASSACHUSETTS**

**12**

**SUFFOLK, ss.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 2084-cv00380F**

US Dist #20-CV-10656

ALVIN HOLDER,

    Plaintiff,

    v.

BOSTON POLICE DEPARTMENT,
CITY OF BOSTON, WILLIAM GROSS, in his
official capacity as the COMMISSIONER OF
THE BOSTON POLICE DEPARTMENT,
WILLIAM EVANS and EDWARD DAVIS, each
in his official capacity as former
COMMISSIONER OF THE BOSTON POLICE
DEPARTMENT, NICOLE TAUB, individually
and in her official capacity as former senior staff
attorney for the BOSTON POLICE
DEPARTMENT, KENNETH FONG,
individually and in his official capacity as THE
BOSTON POLICE DEPARTMENT CAPTAIN,
and SHAWN WILLIAMS, in his official capacity
as DIRECTOR OF PUBLIC RECORDS AND
RECORDS ACCESS OFFICE for the CITY OF
BOSTON AND THE BOSTON POLICE
DEPARTMENT,

    Defendants.

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
F I L E D

APR 0 9 2020

MICHAEL JOSEPH DONOVAN
CLERK OF COURT

## NOTICE OF FILING OF NOTICE OF REMOVAL

Please take notice that the above-captioned case has been removed from the Superior

Court Department of the Trial Court, Suffolk County, to the United States District Court for the

District of Massachusetts. A copy of the Notice of Removal filed with the United States District

Court is attached hereto as **Exhibit A**. In accordance with the provisions of 28 U.S.C.A

§1446(d), the filing of this Notice and the Notice of Removal effects the removal of this action, and this Court may proceed no further unless and until the case is remanded.

Date:   April 2, 2020

Respectfully submitted,
**CITY OF BOSTON,**
By its attorneys:

Eugene F. O'Flaherty
Corporation Counsel

Nieve Anjomi (BBO#651212)
Senior Assistant Corporation Counsel
Edward F. Whitesell, Jr. (BBO#644331)
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA  02201
(617) 635-4098 (NA)
(617) 635-4045 (EFW)
nieve.anjomi@boston.gov
edward.whitesell@boston.gov

## Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that a true copy of the above document was served upon all counsel of record via first class mail on April 2, 2020.

Edward F. Whitesell, Jr.

I HEREBY ATTEST AND CERTIFY ON

April 28, 2020 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE.
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:
First Asst. Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALVIN HOLDER,            ) <br>                         ) <br>       Plaintiff,         ) <br>                         ) <br>       v.                   ) | C.A. No. 20-10656 |

ALVIN HOLDER,                                    )

       Plaintiff,                               )

       v.                                            )     C.A. No. 20-10656

BOSTON POLICE DEPARTMENT,                        )
CITY OF BOSTON, WILLIAM GROSS, in his            )
official capacity as the COMMISSIONER OF         )
THE BOSTON POLICE DEPARTMENT,                    )
WILLIAM EVANS and EDWARD DAVIS, each             )
in his official capacity as former               )
COMMISSIONER OF THE BOSTON POLICE                )
DEPARTMENT, NICOLE TAUB, individually            )
and in her official capacity as former senior staff )
attorney for the BOSTON POLICE                   )
DEPARTMENT, KENNETH FONG,                        )
individually and in his official capacity as THE )
BOSTON POLICE DEPARTMENT CAPTAIN,                )
and SHAWN WILLIAMS, in his official capacity     )
as DIRECTOR OF PUBLIC RECORDS AND                )
RECORDS ACCESS OFFICE for the CITY OF            )
BOSTON AND THE BOSTON POLICE                     )
DEPARTMENT,                                      )
                                                 )
       Defendants.                             )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C.A. §§1331, 1441 and 1446, defendant City of Boston (the "City")

files this Notice of Removal of the above-captioned case from the Superior Court Department of

the Trial Court of the Commonwealth of Massachusetts, Suffolk County, to the United States

District Court for the District of Massachusetts. In support of this notice of removal, the City

states as follows:

## CASE BACKGROUND AND GROUNDS FOR REMOVAL

1.      On February 10, 2020, the plaintiffs commenced a civil action in the Suffolk Superior Court against the City, among other defendants, styled *Holder v. City of Boston, et al.*, C.A. No. 20-00380F (the "State Court Action").  Plaintiff's four hundred and eleven (411) paragraph complaint asserts fifteen (15) counts against the defendants, including thirteen (13) against the City and/or the Boston Police Department ("BPD")[1].  The counts against the City include the first three counts, which allege violations of three federal statutes: 42 U.S.C.A. §1983, 42 U.S.C.A. §1981(a) and 42 U.S.C.A. §1985.  Plaintiff also asserts a series of state statutory claims (under M.G.L. c. 149, §185 M.G.L. c. 66, §10, M.G.L. c. 149, §52C, M.G.L. c. 150C) and common law tort (civil conversion, fraud) and equitable claims (declaratory judgment, injunctive relief) against the City.

2.      As required by 28 U.S.C.A. §1446(a), attached as **Exhibit A** are copies of all process, pleadings and orders served upon the City in the State Court Action.

3.      The Notice of Removal is timely.  Service of Plaintiff's complaint was made on the City on March 4, 2020.  This Notice of Removal was filed prior to the expiration of 30 days from the date of service.  *See* 28 U.S.C.A. §1446(b)(1); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

4.      This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the civil action arises under three separate sections of Chapter 42 of the United States Code.

---

[1] The Boston Police Department is not a separate and distinct legal entity, but rather a department of the City.

2

5.      Venue in proper in this Court pursuant to 28 U.S.C.A. §1441(a) because the State

Court Action is pending in Massachusetts.

6.      To the extent that there are any true defendants other than the City[2] in this action,

all such parties have consented, as required by 28 U.S.C.A. 1446(b)(2)(A), to the removal of this

action to the United States District Court for the District of Massachusetts.

7.      This Notice of Removal has been served on Plaintiff's counsel. A Notice of

Filing of Notice of Removal (attached as **Exhibit B**) will be filed in the Suffolk Superior Court

upon filing of this Notice of Removal.

**WHEREFORE**, the City hereby removes the above-captioned case from the Superior

Court Department of the Trial Court for the Commonwealth of Massachusetts (Suffolk) and

requests that further proceedings be conducted in this Court as provided by law.

Date:   April 2, 2020                         Respectfully submitted,
                                              **CITY OF BOSTON,**
                                              By its attorneys:

                                              Eugene F. O'Flaherty
                                              Corporation Counsel

                                              */s/ Edward F. Whitesell, Jr.*
                                              Nieve Anjomi (BBO#651212)
                                              Senior Assistant Corporation Counsel
                                              Edward F. Whitesell, Jr. (BBO#644331)
                                              Assistant Corporation Counsel
                                              City of Boston Law Department
                                              City Hall, Room 615
                                              Boston, MA  02201
                                              (617) 635-4098 (NA)
                                              (617) 635-4045 (EFW)
                                              nieve.anjomi@boston.gov
                                              edward.whitesell@boston.gov

---

[2] Claims asserted against the individual defendants "in an official capacity" are claims against
the City. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit
against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

3

### Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that on April 2, 2020, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants and counsel for the plaintiff, Julie A. Halaby, Esq. and Jon A. Halaby, Esq., Halaby Law Group, P.C., 14 Main Street, Hingham, MA 02043, who have not yet made an appearance before this Court.

_/s/ Edward F. Whitesell, Jr._

Edward F. Whitesell, Jr.

4